562

THOMAS J. VITALE, Respondent-Appellant, v COYNE REALTY, INC., et al., Appellants-Respondents. (Appeal No. 1.)

THOMAS J. VITALE, Appellant-Respondent, v COYNE REALTY, INC., et al., Defendants; PATRICIA TAWIL, Respondent-Appellant.

PATRICIA A. TAWIL, Respondent-Appellant, v THOMAS J. VITALE, Appellant-Respondent. (Appeal No. 2.)

THOMAS J. VITALE, Appellant, v GEORGE H. VAN LENGEN, Respondent, et al., Defendants. (Appeal No. 3.)

Fourth Department, February 28, 1979

### APPEARANCES OF COUNSEL

*Crystal, Manes & Rifken, P. C. (Milton Crystal* of counsel), for Patricia Tawil.

*McCrone & Davis (Jeffrey McCrone* of counsel), for Coyne Realty and another.

*Driscoll, Mathews, Gingold & Case (Eric Alderman* of counsel), for Thomas Vitale.

*Coulter, Fraser, Ames, Bolton, Bird & Ventre (Bruce Bolton* of counsel), for George Van Lengen, respondent.

### OPINION OF THE COURT

*Per Curiam.*

The members of the court are in general agreement with the disposition of the various issues on this appeal as set forth in the opinion of Justice CALLAHAN. A majority of the court, however, believe that the method used to measure restitution due upon rescission of the sale of the restaurant business was improper. Indeed, were it not for the fact that the property has already changed hands and both the vendee, plaintiff Vitale, and the vendor, defendant Tawil, have stated they now elect rescission and restitution, we might well find rescission impossible (see *Ungewitter v Toch,* 31 AD2d 583, affd 26 NY2d 687). In view of their stipulation, however, we reverse and remit the matter to Trial Term for appropriate findings of fact and further proof if necessary.

Upon remand, the trial court should, as nearly as possible, attempt to place the parties in their original positions before the sale (see, generally, 12 CJS, Cancellation of Instruments, § 77 *et seq.).* Since the court was reviewing the transfer of the

real estate and operation of a going business, certain considerations were appropriate.

First, the court should determine plaintiff's total investment. We find that the amount (for down payment, legal fees and broker's commission) when he purchased the restaurant was $56,576.17 (see 3 Black, Rescission and Cancellation [2d ed], § 688).

Second, the court should determine any change in the net worth of the business from the date of plaintiff's purchase to the date of rescission. If the net worth was greater at rescission, that increment should be added to plaintiff's investment and if it was less, it should be deducted from his investment. Third, the court should determine the gross income from the business during the period plaintiff operated it and subtract from that amount the expenses of operation, including a reasonable salary to plaintiff for the time he worked at the restaurant. The net profit of the business determined by this calculation should be subtracted from the sum of plaintiff's original investment and any additional net worth or the difference if there was a loss in the net worth. If the business sustained a net loss the amount of that loss should be added to the original investment plus the net worth computations. The resulting sum represents the amount of the restitution in plaintiff's favor and he is entitled to interest on this amount at such rate as the court shall find as a fact is reasonable for investments of this type during the period involved.

The amended judgments awarding damages against defendants Tawil, Dumond, Coyne and Coyne Realty, Inc. should be reversed and the complaints against said defendants dismissed; the order granting rescission against defendant Tawil should be reversed insofar as it determined the amount of restitution and the matter remitted to Trial Term for further proceedings in accordance with this opinion; and the judgment dismissing plaintiff's complaint against defendant Van Lengen should be affirmed.

CALLAHAN, J. (dissenting). I dissent in part. The majority demand acceptable accounting principles or certitude in a small business operation when it does not exist from the proof. The trial court found that because of the bookkeeping methods used by the plaintiff, Thomas J. Vitale, it is impossible to arrive at a mathematically certain conclusion. The impossibility of establishing certitude in computing damages should not foreclose the parties' right to recover. If the trial

court's apportionment of damages can be reasonably supported by the record it should not be disturbed.

In April, 1976 plaintiff, Thomas J. Vitale, sought employment as a salesman with defendant, Coyne Realty, Inc. At the time of his interview with the manager, defendant Sally Dumond, he expressed an alternative interest in purchasing and operating a restaurant. She indicated that Pfeiffer's Drive-In, among others, was available. Returning in May, he restated his interests in employment or a business venture. Dumond advised that Pfeiffer's could be purchased for $160,-000 and arranged an appointment with the owner, defendant, Patricia Tawil. On inspection of the premises, equipment, and fixtures he was told by Tawil that she grossed $650 to $700 per day. When a request for an examination of the books was made, Tawil indicated that they were not accurate as some cash from certain operations was never recorded and that she discarded her register tapes. After viewing the premises, Sally Dumond and Vitale drafted a composite list of the assets and equipment of the business and calculated the income and expense of the operation from available figures. Dumond allocated $35,000 to good will and indicated that the place was "a gold mine". Relying on Tawil's appraisal of operations it was estimated that Vitale could reasonably anticipate a yearly income of $50,000. Plaintiff expressed a sincere interest in purchasing the business. A purchase offer was typed by Shirley Coyne, subject to approval by Vitale's father, and contained a provision that a more formal detailed contract would be drafted with the purchase offer serving to determine the sales price and terms of sale. That evening, Vitale, his father, Shirley Coyne and Sally Dumond viewed the restaurant. Tawil informed plaintiff's father that she grossed $17,000 per month. After father approved, arrangements were made for financing and closing the transaction.

When advised that Vitale had no personal attorney, Coyne recommended George H. Van Lengen as one familiar with restaurant closings. A phone call by the broker informed Van Lengen of the contents of the purchase offer and arranged for him to meet his new clients. At their first meeting, Van Lengen expressed his disappointment about certain changes made in the purchase offer which he had not approved. Upon learning from the plaintiff that the records of the business were not utilized in preparation of the statements of assets and profit, Van Lengen recommended an accountant be re-

tained to analyze the operational accounts and records. An accountant was hired but commissioned merely to establish books, capitalization and a record keeping system.

The closing occurred on May 28, 1976; the deed was executed transferring the premises, and Vitale was in business. The selling price paid was $150,000 and Tawil took back a first mortgage of $106,000 payable with interest at 8½% per annum. Vitale agreed to pay the broker's commission of $10,000 and an attorney's fee of $1,000. He continued operation of the business for some period of time; however, it failed to provide the income as represented and an action was commenced against Tawil and the brokers, for damages and rescission based on fraudulent misrepresentation and also against attorney Van Lengen for malpractice.

At the trial, plaintiff's complaint against Van Lengen was dismissed at the close of the plaintiff's proof and the jury rendered a verdict against defendants Dumond, Coyne and Tawil in the amount of $8,000 each and against defendant Coyne Realty, Inc. in the amount of $1,000. On motion, the verdict was reduced pro rata to conform with the $20,000 *ad damnum* clause. After an extensive hearing to determine the efficacy of rescission and restitution, the court granted rescission and ordered restitution by Tawil in the amount of $14,065.12. Of this amount $11,065.12 was to be paid immediately to the plaintiff; $3,000 was to be held in escrow to cover anticipated restoration costs. Vitale was ordered to transfer certain checks within his possession to Tawil.

Defendants Coyne Realty, Inc., Shirley Coyne, Sally Dumond and Patricia A. Tawil appeal from the amended judgment of $20,000. Vitale cross-appeals from the judgment insofar as it reduced the verdict pro rata to conform with the *ad damnum* clause, from the dismissal of his malpractice complaint against defendant George H. Van Lengen, also from a judgment and an amended judgment respectively which granted him rescission on the condition, *inter alia,* that he accept $14,065.12 in restitution and convey to defendant a warranty deed free and clear from all liens and encumbrances. Tawil's cross appeal from the aforesaid judgments has been withdrawn, except as to the amount of restitution.

We affirm the dismissal of plaintiff's malpractice complaint against George H. Van Lengen. He was retained subsequent to the execution of the contract to represent Vitale in the closing of the property sale and transfer of the restaurant business

and no counsel was sought of him or opinion rendered as to the soundness of the business venture. An attorney undertakes that he possesses knowledge and skill common to members of his profession and that he will exercise an ordinary and reasonable degree of care, attention, prudence and skill on behalf of his client. He is responsible to his client for damages resulting from the want of ordinary care, skill and reasonable intention (3 NY Jur, Attorney and Client, § 59). Reviewing the proof in the light most favorable to Vitale and affording him the benefit of all inferences which can be reasonably drawn from the proof *(Patterson v Proctor Paint & Varnish Co.,* 21 NY2d 447), we find no breach of duty to him or any loss on which the jury could have found in his favor. An attorney has no duty to advise a client as to the feasibility of a financial investment after his client has contracted for the purchase. The recommendation to retain the services of an accountant to examine the books and records was not heeded. While an accountant was hired, he was requested to establish books and records for the new business venture. Accordingly we find no error in trial court's dismissal of the complaint against Van Lengen.

We also reverse the judgments against defendants Coyne, Dumond and Coyne Realty. The record does not support a finding of fraud by them. To sustain a cause of action for fraud, the plaintiff must establish a representation of a material fact, the falsity of that representation, *scienter,* reliance and damages (24 NY Jur, Fraud and Deceit, § 14; *JoAnn Homes v Dworetz,* 25 NY2d 112; *Channel Master Corp. v Aluminum Ltd. Sales,* 4 NY2d 403, 407; *Reno v Bull,* 226 NY 546, 550; *United Nat. Bank v Ettinger,* 59 AD2d 584, app dsmd 42 NY2d 1061). Plaintiff admits that the figures the brokers utilized in formulating the prepurchase calculations were given to him by Tawil, not the brokers and there can be no actionable misrepresentation when the plaintiff knows that the speaker is not the source of the information and does not vouch for its authenticity *(Cudemo v Al & Lou Constr. Co.,* 54 AD2d 995). Inasmuch as there was no proof of *scienter* on the part of the brokers, the trial court should have dismissed the complaint as against them or directed a verdict in their favor *(Cohen v Hallmark Cards,* 45 NY2d 493).

Plaintiff established his cause of action against Tawil. She admittedly gave information to him which led him to believe that the restaurant operation was highly profitable but her

representations of inflated income are contrary to the information of her own tax returns of 1974, 1975. Tawil's failure to present the books for review when requested, her indication that cash register receipts were not kept, and her failure at trial to justify the information which she gave to the plaintiff during his inspection lead to the inescapable conclusion that she intended to mislead plaintiff for the purpose of inducing him to purchase her business and support the finding that her conduct was fraudulent *(Reno v Bull, supra; JoAnn Homes v Dworetz, supra; United Nat. Bank v Ettinger, supra).*

In his complaint, Vitale sought rescission of the contract of sale and also sets forth a cause of action for damages based on the alleged fraud. CPLR 3002 permits pleading of inconsistent causes of action and specifically permits pleading of a claim for damages for fraud and for rescission. However, a plaintiff must elect his remedy. He cannot recover damages for fraud and have rescission too. This is because an award of damages for fraud affirms the contract while penalizing the fraudulent party for his breach. Rescission vitiates the contract and places the parties in *status quo* prior to the transaction *(National Conversion Corp. v Cedar Bldg. Corp.,* 23 NY2d 621). The choice of remedy for damages and rescission lies "with the sound judgment and discretion of the trial court" *(Ungewitter v Toch,* 31 AD2d 583, 584, affd 26 NY2d 687; CPLR 3017). At what point in the trial election must be made should be determined by the Trial Judge in light of the record as it develops *(Lukaris v Harrison Vending Systems,* 28 AD2d 1019; Siegel, NY Prac, § 219). While no election of remedies was ever made at trial by the parties or at the direction of the presiding Judge, the record and representations made on appeal disclose that Tawil is presently in possession and operating the business and neither party desires this court to disturb the *status quo.* We therefore affirm the judgment granting rescission and the jury verdict awarding damages to the plaintiff for fraud is vacated. Although the court made adjustments in its findings attributable to the jury verdict, it was improper to permit damages for fraud and also restitution in rescission.

Rescission is an equitable remedy; therefore, whenever the court rescinds a contract, it has the duty to place the parties where they were before the vitiated contract was made (24 NY Jur, Fraud and Deceit, § 223). Damages represent the actual loss sustained *(Hotaling v Leach & Co.,* 247 NY 84, 87; *Reno v Bull,* 226 NY 546, *supra).* If complete restoration is impossible

the terms upon which rescission will be granted rest within the sound discretion of the court *(Buffalo Bldrs. Supply Co. v Reeb,* 247 NY 170, 176). The court should adjust the equities between the parties to avoid unjust enrichment (CPLR 3004) in order that no one be placed in a better position after rescission than when the contract was executed (50 NY Jur, Restitution, §§ 51, 52; *Ungewitter v Toch, supra).*

The trial court diligently struggled to resolve the issues presented and to place the parties in their original position by taking the total expended by the plaintiff in the purchase of the restaurant, deducting from it the money which he had received and used to pay expenses and then adding on an adjustment for salary to reach a total amount to be awarded the plaintiff. It is peculiarly within the discretion of the trial court to assess the qualifications of experts and the persuasiveness of testimony as to estimates and evaluation and where there are findings of fact in this regard these should not be disturbed when the court has not abused its discretion *(National Conversion Corp. v Cedar Bldg. Corp.,* 23 NY2d 621, 630, *supra).* Our review confirms the trial court's detailed analysis and findings to be accurate, which we adopt in part.

It was proper for the trial court to deny Vitale a credit for the ($1,031) disbursements on closing; $1,239.22 for repairs; and ($1,741.66) for prepaid taxes and insurance since these amounts were found by the court to have been paid by Vitale from business receipts. Denial of the plaintiff's claim for interest was proper within the discretion of the court (CPLR 5001; Siegel, NY Prac, § 411). The actual loss sustained by Vitale from the record is computed as follows:

| | | |
|---|---:|---:|
| Plaintiff Vitale's total payments to purchase Pfeiffer's restaurant | | $ 56,576.17 |
| Credits to Tawil from business income: | | |
| Repayment of acquisition loans by Vitale | $ 17,500.00 | |
| Purchase of stock | 500.00 | |
| Cash diverted from business: | | |
| Coin-operated machines (average of $100 per month for 17 months) | 1,700.00 | |
| Unity Mutual deliveries (74 weeks to Oct. 31, 1977 at $60 per week) | 4,440.00 | |
| Cash in bank account (Oct. 31, 1977) | 3,185.97 | |
| Personal expenses of plaintiff paid out of business | 6,458.24 | |

Other credits:

| | |
|---|---:|
| Fire loss check* | 1,288.59 |
| Spero rebate check* | 235.17 |
| Restoration costs | 3,000.00 |
| | $ 38,307.97 |
| | $ 18,268.20 |
| Salary adjustment credit to Vital | 6,754.16 |
| Net amount due Vitale from Tawil | $ 25,022.36 |

Accordingly I dissent from the opinion *Per Curiam* insofar as it reversed the order granting rescission against defendant Tawil and would modify said order in accordance with this dissent.

SIMONS, J. P., HANCOCK, JR., SCHNEPP and WITMER, JJ., concur in *Per Curiam* opinion; CALLAHAN, J., dissents in part in an opinion.

Judgments in Appeal No. 1 unanimously reversed, with costs to defendants and complaint dismissed.

Order in Appeal No. 2 reversed, without costs and matter remitted to Supreme Court, Onondaga County, for further proceedings in accordance with *Per Curiam* opinion.

Judgment in Appeal No. 3 unanimously affirmed, with costs.

---

* If plaintiff has delivered these checks to Tawil, then no credit should be allowed.