489 A.2d 553

**Jay LINER**

v.

**STATE of Maryland.**

**No. 1163, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

April 3, 1985.

George E. Burns, Jr., Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Valerie J. Smith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before WILNER, GETTY and ROSALYN B. BELL, JJ.

WILNER, Judge.

Jay L. Liner, appellant, is a member of the Bar of this State. On September 20, 1984, while serving as counsel for Lamont Patton, he was found guilty by Judge Kenneth L. Johnson of the Circuit Court for Baltimore City of three separate acts of direct criminal contempt of court, for which he was temporarily jailed and ultimately fined a total of $300. Mr. Liner has appealed from those judgments of contempt.

There is no adequate way to summarize what occurred in court that September day. The record itself must be read.

By way of preface, it appears that Mr. Liner's client, who had an extensive juvenile and criminal record, had pled guilty to some assault-type offenses, the precise nature of which is not in the record before us. At a disposition hearing held on September 7, 1984, before Judge Johnson, Patton, exercising his right of allocution, made a lengthy address to the court. He was reading a prepared statement. At about 9:55 a.m., when Patton had but three pages to go, the State's Attorney passed a note to the judge in which he asked to be excused because he was due in another court. Over Mr. Liner's objection, the judge interrupted Mr. Patton and adjourned the proceeding.

The matter was rescheduled for September 20, which apparently was the earliest date agreeable to the prosecutor, the court, and Mr. Liner. We now turn to the record for what occurred when the parties appeared in court that day:

"THE COURT: Very well. Mr. Patton, you were in the process of making a statement by way of allocution when the court had to allow the State's Attorney to attend another hearing, which was required by the rules, and so if you could resume, if you wish, go right ahead.

MR. LINER: Your Honor, if I may, I would like to make a preliminary statement on behalf of Mr. Patton.

THE COURT: Why don't you enter your appearance.

MR. LINER: My appearance has been entered. Jay L. Liner, 1300 Reisterstown Road. I am Mr. Patton's attorney.

THE COURT: Go right ahead.

MR. LINER: Thank you, Your Honor. Your Honor, obviously, you recall the circumstances of what happened in this matter when it was called for disposition. Mr. Patton had prepared a very lengthy autobiographical statement about what had happened to him through his life, and what events had compelled him and led him to the involvement of this crime.

I found it to be one of the most extraordinary things that I have ever witnessed as an attorney in the 12 years, to hear an eloquent plea such as that, and quite frankly, I was very moved by the intensity and the delivery of this gentleman.

At the time, if you recall, he was well into the statement. He had started approximately a quarter of 10:00 [*sic*] and was reading continuously for over an hour. He was exactly 3 pages from the end of the statement, and I felt, under the circumstances, that the State's Attorney's request to you to break the court at the time was improper.

I raised an objection at that time, and you instructed me to sit down. I understand the State's Attorney had obligations. I had an obligation also, but under the circumstances what was going on here, in this court, to me took priority over anything.

I have given this situation a long, hard thought about Mr. Patton, and everything else, and my conscience calls for me to move for a mistrial on this case, Your Honor. I honestly believe that the impact of what he was doing at the time has now been lost. Under any circumstances, the importance of the time and preparation he had made in making this statement, and the eloquence of it has been basically worn off due to the continuance in the matter, and I don't think, under the circumstances, not that I am showing any disrespect for the court or disregard for the court's feelings, I think, under the circumstances, I honestly have doubts in my mind whether the extraordinary circumstances that Mr. Patton had spoken about in his life and the moving speech about his finding religion and his sincerity, if you remember the court at one time had quoted the bible to Mr. Patton, and I felt even you were really moved and swayed by this speech. And I just don't see coming back 2 weeks later and finishing up the last 3 pages how, under any circumstances, that is going to benefit Mr. Patton.

I am asking the court to strike the guilty plea and put this matter back in under the general trial docket, and give Mr. Patton a clean opportunity here to request whatever, you know, his probation or whatever before a new trial under new circumstances. I think it is a fair request.

THE COURT: Are you finished? Have a seat.

MR. LINER: Your Honor, am I going to get an answer to my request?

THE COURT: Sheriff, stand over there by this lawyer, would you. Sit down, now.

(Mr. Liner still standing.)

Take him out, Sheriff. You are in contempt. Put the cuffs on him and take him to the lock-up.

MR. LINER: May I make a statement for the record?

THE COURT: Sheriff, would you take this man out here, please. I told you to sit down twice, and you wouldn't do it. You are in contempt and we will deal with you later. Take him away. Right now.

(Mr. Liner was removed from the courtroom.)

THE COURT: Mr. Peed, take the inmate back, please. The proceedings will be continued at a later time. Mr. Doan [Assistant State's Attorney], you are excused for now."

The proceeding resumed about an hour later. We pick up what occurred from the record:

"THE COURT: Mr. Lenor (sic),[1] would you step forward. Where is the defendant? Step up to the table, Mr. Patton. This is the continued proceeding of State v. Patton, and we started the sentencing proceeding this morning and w[ere] interrupted by Mr. Lenor's refusal to obey an order of this court to be seated, and the court could not perform its function and, therefore, had to ask that Mr. Lenor be taken down to the lock-up, hopefully to give him time to cool off so that the court could go and continue its function, and Mr. Lenor was held in contempt of this court by refusing to do so.

Now, Mr. Lenor, at the last hearing we had, which was on the 7th day of September, 1984, as was indicated, Mr. Patton was making a speech, which had gone on for approximately an hour. The rules of this court require that attorneys be allowed to leave at 5

---

1. Mr. Liner pronounces his name with a long "i," as in "miner." He had, as noted in the record, identified himself to the court earlier that morning. From the transcript, it would appear that the court thereafter referred to him as "Lenor," indicating a long "e."

minutes of 10:00 each morning, so that they can go to other courts. This judge did not make that rule, and this judge is bound by that rule, and so are you.[2]

I overruled your objection at that time, and that was the reason why I did it, because I was not free to disobey a rule of this court; just as you or Mr. Doan or anybody else [are] not free to disobey one, neither is the judge.

This morning I called upon Mr. Patton to continue his statement. You interrupted, which was fine, and you wanted to make a preliminary statement, and I allowed you to make that preliminary statement, after which I asked you to please be seated. You refused to do so, and insisted upon the court making a ruling on your motion, which was the subject of your preliminary statement, for mistrial, as I understand it, or to allow him to withdraw his plea.

You don't have the option of telling the court when to rule in this case; you have to do as you are told. You had all the time you wished to make the statement, and I asked you were you completed, and this court has to be in charge of what the next step is.

Now, I hope you will abide by those terms, but just to insure that you can, you are hereby fined the sum of $100.00 for contempt of court, and I am doing that so that you will not obstruct any further these sentencing proceedings. Do you understand?

MR. LINER: I understand the court's decision.

THE COURT: Good. Now, sit down.

MR. LINER: May I be allowed to make a statement?

THE COURT: Contempt of court, $100.00 and that is consecutive with the last $100.00 that I gave you. Now, sit down.

---

2. There is no such *rule.* There is, however, a *policy* adopted by the Circuit Court for Baltimore City to that effect, designed to assure that disposition proceedings do not interfere with scheduled trials.

MR. LINER: Your Honor, may I speak to my client?

THE COURT: Contempt of court, and that is consecutive with the last two I have given you.

Now, sit down. The next time will be a jail term.

Mr. Patton, you have a statement that you were making when we left here on the 7th day of September, 1984. Would you like, sir, to continue your statement?"

Patton responded in the affirmative and then continued with his allocution, following which the court imposed sentence. The judge then returned to the matter of Mr. Liner:

"THE COURT: Mr. Lenor, do you have your $300.00?

MR. LINER: No, I do not, Judge.

THE COURT: When can you get it?

MR. LINER: I guess I have to go get my checkbook.

THE COURT: How long will it take you to go get it?

MS. MERVIS: Lisa Mervis, Jay Liner's law partner, law firm of Cohen, Benter, Liner, Carter and Mervis. We will post the $300.00.

THE COURT: Wait a minute, ma'am. You have no say in this. It's not 'we.' I don't know who you are, don't care, and you just busted in and blurted out the statement. Now, you turn around and you go out that door, and don't you come back and don't say anything. Sheriff. Now, when can you have the money here, to the sheriff?

MR. LINER: Your Honor, I can have the money here by the close of business today.

THE COURT: I want it, a certified check or a money order.

MR. LINER: I understand that.

THE COURT: To the sheriff, $300.00, before 4:30.

MR. LINER: I understand that.

THE COURT: All right. That is a condition under which you will be released. If you don't, then I am going to put you in jail.

MR. LINER: Or cash, certified check, money order or cash?

THE COURT: The cash was your suggestion, but that is not a law. It is certified check or money order.

MR. LINER: I understand.

THE COURT: All right."

The next day, in accordance with Md. Rule P3,[3] Judge Johnson filed with the clerk a written memorandum and order dealing with the contempt. The memorandum begins with the proceeding on September 7, and acknowledges that the court interrupted the defendant in order to excuse the prosecutor. It then continues:

"An informal chambers conference was held at noon on September 7, 1984, between the Court and counsel. The State's Attorney was prepared to continue with the disposition proceedings at that time or at 2:00 p.m., as to both Defendants. Counsel for Defendant Patton's co-Defendant was agreeable to commence the disposition proceeding at 2:00 p.m. Counsel for Defendant, Patton, Mr. Liner, stated that he had to attend to other matters and was not available anytime that day, September 7, 1984. The disposition for co-Defendant, Preston Walker, was scheduled and held on the afternoon on September 7, 1984. The Court refused to require Mr. Liner to continue with the disposition proceedings on the afternoon of September 7, 1984 and allowed him to leave to take care of his other business. At the aforementioned informal chambers conference, the Court instructed the Assistant

---

3. Md. Rule P3b provides:
   "Where a direct contempt is committed, the court shall sign a written order to that effect. The order shall recite the facts, be signed by the judge and entered of record. The order shall state which of the facts were known to the court of its own knowledge and as to any facts not so known, the basis for the court's finding with respect thereto."

State's Attorney and Mr. Liner to attempt to agree on a date for the continuation of the Defendant, Patton's, disposition proceedings and informed them that the Court would set a disposition date if counsel could not agree. Mr. Liner subsequently arranged with the Assistant State's Attorney for an agreed disposition date of September 20, 1984. A letter from the Court dated September 11, 1984 to counsel confirmed the September 20, 1984 date for the continued disposition.

On September 20, 1984, the continued disposition proceedings were resumed. The Court called upon Defendant, Patton, to continue his statement to the Court. Mr. Liner interrupted and said that he wanted to make a preliminary statement. Mr. Liner moved the Court to allow the Defendant to withdraw his plea of guilty and place the matter back on the trial docket. The main basis for the motion by counsel for the Defendant, was that the 'two week' delay and the interruption of the disposition proceedings may be harmful to the Defendant, as the Judge may have forgotten what the Defendant had said in his statement of September 7, 1984. This Court finds that Mr. Liner was being less than candid and was dissembling in making this statement. Mr. Liner well knew that the delay was caused by his request to the Court for a delay so that he could attend to other matters.

The Court inquired of Mr. Liner as to whether he had completed his statement. Mr. Liner, through body movement, indicated that he had. Whereupon, the Court instructed Mr. Liner twice to take a seat. Mr. Liner refused to take a seat and insisted on a ruling by the Court on his aforestated motion. The Court was not prepared to rule on the motion at that time and because Mr. Liner refused to comply with the Court's instruction to take a seat, his conduct prevented the Court from conducting the disposition proceedings in an orderly manner. Mr. Liner was thereupon held to be in contempt of

Court and was Ordered removed from the courtroom and to be detained by the Sheriff.

Mr. Liner was returned to the courtroom fifty-two minutes after he had been removed for the purpose of continuing the disposition proceeding. The Court informed Mr. Liner that he had been held in contempt of Court, explained the reason for the contempt and fined him One Hundred Dollars ($100.00). During the course of the proceedings, the Court again instructed Mr. Liner to be seated, he again refused. He was held in contempt and again fined One Hundred Dollars ($100.00). Immediately thereafter, Mr. Liner again refused to comply with the Court's instructions to be seated. He was again held in contempt and fined One Hundred Dollars ($100.00)."

The judge's memorandum concluded with the actual finding of contempt and the imposition of the fines.

■■■ Mr. Liner presents a single, simple argument on appeal: There was no basis for the contempt findings. He is absolutely right.

In *State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867 (1973), the Court of Appeals discussed in some detail the nature, function, and history of a court's authority to declare and punish contempt. It said, at 717, 298 A.2d 867: "One weapon in the court's arsenal useful in defending its dignity is the power to punish for contempt. *But the magnitude of its force demands care and discretion in its use so as to avoid arbitrary, capricious or oppressive application of this power.*" (Emphasis added.)

A judge must, of course, have the ability to control his or her courtroom, to assure that judicial proceedings are conducted fairly, efficiently, and with dignity and decorum. And, "[a]lthough a lawyer has the duty to represent his client zealously, he should not engage in any conduct that offends the dignity and decorum of proceedings." Code of

Professional Responsibility, Canon 7, Ethical Consideration 7-36. A judge has corresponding duties, however, to be "temperate," "patient," and "courteous to lawyers." Canons of Judicial Ethics, Canons V and X; *see also* Canon XV. It is a commonsense balancing process; as stated in the Code of Professional Responsibility, Canon 7, Ethical Consideration 7-39:

> "In the final analysis, proper functioning of the adversary system depends upon cooperation between lawyers and tribunals in utilizing procedures which will preserve the impartiality of tribunals and make their decisional processes prompt and just, without impinging upon the obligation of lawyers to represent their clients zealously within the framework of the law."

Whether a lawyer's conduct in the courtroom is so disruptive or reprehensible as properly to invoke the extraordinary power of summary punishment for direct, criminal contempt must be viewed in the context of these somewhat reciprocal obligations. A judge may, and should, be firm; but he or she is not entitled to be a tyrant.

It has long been the practice, now solemnized by Md. Rules 886 and 1086, to accord great latitude to trial judges in the factfinding process. We are enjoined from setting aside a judgment on the evidence unless that judgment is clearly erroneous. It is in deference to that necessary principle that we have set forth in full the relevant parts of the record, thus avoiding the danger of asserting as fact that which is merely our perception of the facts.

The record is clear. It demonstrates without any doubt that the judge indeed was "arbitrary, capricious [and] oppressive" in his application of the contempt power. There is no evidence whatever that Mr. Liner acted in a contumacious manner, that he did anything to offend the dignity of the court. However a reasonable judge might view the merits of Liner's initial request to strike his client's guilty

plea, under the circumstances it was not a frivolous request. For the sake of rigid adherence to a bench policy, the judge had interrupted Mr. Patton's allocution just a few minutes from its conclusion. The court found Liner in contempt on the first occasion because he asked if the court intended to rule upon his motion and because he apparently did not sit down instantly upon the court's command to do so. The question was a reasonable and indeed a necessary one, for the further course of the proceeding depended on whether the court intended to grant the motion for mistrial. How long Mr. Liner remained standing is not clear from the record; even the judge, in his memorandum, makes no comment as to the length of time.

Following his being thrown in jail, fined $100, and given a tongue-lashing by the judge, the lawyer asked if he could make a statement. That simple request, which, again, was an entirely reasonable one under the circumstances, brought down on him the second contempt. The third followed his equally simple and seemingly polite request to speak with his client. None of these acts, singly or together, can possibly justify what the court did.

Judge Johnson's findings (1) that Mr. Liner "was being less than candid and was dissembling" in suggesting that his client may have been prejudiced, (2) that the two-week delay "was caused by his request ... so that he could attend to other matters," (3) that he "refused to take a seat and insisted on a ruling by the Court," and (4) that his conduct "prevented the Court from conducting the disposition proceedings in an orderly manner," are absolutely without foundation. They are clearly, unequivocally, unmistakably erroneous. *See Muskus v. State,* 14 Md.App. 348, 286 A.2d 783 (1972).

JUDGMENTS REVERSED; MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS. MANDATE TO ISSUE FORTHWITH.