(February 26, 1991)

■ In the Matter of STEVEN BROSTOFF, as Assistant District Attorney, Petitioner, v CAROL BERKMAN, as Acting Justice of the Supreme Court of New York County, Respondent.—Application pursuant to CPLR article 78 for a judgment vacating an order of the Supreme Court, New York County (Carol Berkman, J.), entered on May 23, 1990, summarily holding petitioner in contempt of court, is denied, the cross-motion granted and the proceeding dismissed, without costs or disbursements.

An examination of the transcript of the underlying proceedings demonstrates that respondent was clearly justified in summarily finding petitioner, an assistant district attorney, in criminal contempt of court. Indeed, petitioner acknowledges that his conduct was regrettable and that he should have complied with the Judge's command but insists that he did

not act in a wilful or contumacious manner. Rather, he urges, the incident in question was the result of a misunderstanding between him and the court, which had consistently treated both him and the office which he represents with disparagement and antipathy. However, the fact remains that regardless of the Judge's attitude toward petitioner, there was simply no excuse for petitioner's lack of respect for the court and his refusal to abide by its lawful order. According to section 750 (A) of the Judiciary Law, a court is empowered to punish for criminal contempt a person who is guilty of, among other acts, the following:

"1. Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority. * * *

"3. Wilful disobedience to its lawful mandate.

"4. Resistance wilfully offered to its lawful mandate."

Punishment for contempt may be summary "[w]here the offense is committed in the immediate view and presence of the court" (Judiciary Law § 755; *see also, Matter of Katz v Murtagh,* 28 NY2d 234). In the instant situation, petitioner was not directed to remove himself from the courtroom; he was simply ordered from the well, an area in which it may well be disruptive to court proceedings to have persons carrying on conversations while cases are being heard. Yet, petitioner's response to the Judge's mandate that he leave the well was to announce insolently that "I have a right to be here. I am a deputy bureau chief of this bureau. I am entitled to check my cases." When the court repeated that he get out of the well and that his choice was either to sit in the audience or depart through the holding pens, petitioner, in effect, taunted the court by stating that "I will go that way [indicating the pens]." Thus, it is evident that he not only deliberately disobeyed the court's command but his behavior was derisive of the court's authority. It appears that petitioner had no intention of complying with the court's lawful order even when he was confronted with the possibility of legal compulsion.

Certainly, the presiding Judge, not an assistant district attorney, possesses the authority to govern the functioning of the court. Moreover, it is the Judge's responsibility to uphold order and decorum in the court. In that connection, it is within the domain of the Judge to regulate what occurs in his or her courtroom, including activity in the well. If a Judge

wishes to have the well cleared, that is his or her right, and neither defense counsel nor the prosecutor may ignore the court's direction in that respect. According to 22 NYCRR 604.1 (d) (7) an attorney is not relieved of his obligation to maintain a respectful attitude toward the court "by what he may regard as a deficiency in the conduct or ruling of a judge". As the Court of Appeals has observed, "[h]owever misguided and erroneous the court's order may have been, petitioner was not free to disregard it and decide for himself the manner in which to proceed" *(Matter of Balter v Regan, 63 NY2d 630, 631)*. Therefore, petitioner was unwarranted in challenging the propriety of the court's order; so long as it was lawful, he was obliged to obey. Petitioner's conduct was wilful, defiant, contemptuous and generally offensive, and, consequently, the summary finding of criminal contempt was fully supported by the record. Concur—Murphy, P. J., Sullivan, Carro, Milonas and Rubin, JJ.

Sullivan, J., dissents in a memorandum as follows: Since I am of the view that the finding of contempt in this case constitutes a gross deviation from the judicial obligation of impartiality and was the result of an oppressive application of the contempt power, I would grant the petition, vacate the contempt adjudication and direct remittance of the fine.

Petitioner, an assistant district attorney in the office of the District Attorney of New York County, is the deputy chief of Trial Bureau 40/50 of the Office of the Special Narcotics Prosecutor. Respondent is an Acting Justice of the Supreme Court, New York County, who, during the pertinent period, presided over Part 50 in New York County, one of three arraignment and assignment parts in that county in which defendants indicted for felony offenses are arraigned and the part which receives indictments brought by prosecutors assigned to, *inter alia,* Trial Bureau 40/50 of the Special Narcotics Prosecutor's Office.

In his capacity as deputy bureau chief, petitioner had appeared before respondent from time to time in connection with his own cases and those of the prosecutors whom he supervises. During this period, the parties disagreed as to whether defendants who cooperated with the District Attorney's office should receive lenient treatment in exchange for their cooperation. Respondent was, to say the least, unsympathetic to petitioner's efforts to obtain cooperation from defendants. On May 22, 1990, when petitioner asked to approach the bench on a particular case, respondent warned that "[i]t had better not be on your usual mission because if so

I am going to have you removed from my courtroom and barred for all time. Do you still wish to approach?" After petitioner responded, "I think so," petitioner and defense counsel approached the bench and brought up a question regarding the cooperation of the defendant in that case. Respondent ordered petitioner to "get out of my courtroom I don't want you here." At that point, the matter was adjourned.

The following day, in the course of his regular duties, petitioner entered the well in respondent's courtroom during a bench conference on another matter, which was being handled by another assistant District Attorney. The following exchange took place between the parties:

"THE COURT: Get out of the well.

"MR. BROSTOFF: I have a right to be here. I am a deputy bureau chief of this bureau. I am entitled to check my cases.

"THE COURT: Get out of the well, you are not permitted to be in the well in my courtroom. Sit in the audience. You either step out that way [indicating the courtroom's public doors] or that way [indicating the door to the holding pens] Mr. Brostoff.

"MR. BROSTOFF: I will go that way [indicating the door to the pens].

"THE COURT: Very good. You're in contempt, would you like to call your bureau chief before you are sentenced?

"MR. BROSTOFF: No, your honor.

"THE COURT: Very good. I will hear you on sentence.

"MR. BROSTOFF: I don't think there is any reason not to allow me in this courtroom. It is just arbitrary and capricious. I don't think it is proper, nor is it fair. I have every right to stand up on my cases and be here with my bureau.

"THE COURT: Mr. Brostoff, I asked you to step out of the well and you refused to do so. There is a case before the court, it is a New York County case, it is not your case.

"MR. BROSTOFF: I didn't approach.

"THE COURT: Excuse me Mr. Brostoff, this is not a dialogue. So, if you have a right to stand up on your cases you can sit in the audience. And wait until your case is called.—

"MR. BROSTOFF: Then—

"THE COURT: Excuse me, I am done with you. You said you wanted to be heard and you were heard. Please write up the mandate. He is fined 50 dollars or 3 days."

The "mandate" adjudging petitioner in contempt stated that

he was found guilty of "disorderly, contumacious and insolvent [sic] behavior", in that, "having no business being in the well of the courtroom, and having been ordered out of the well, he refused to leave on the court's order."

The next day, when assistant District Attorneys Robert Silbering and Mark Dwyer appeared before respondent and asked her to vacate the contempt order, she stated:

"I am glad you have given me the chance to expand on this record.

"The preceding day Mr. Brostoff came up on a case in this courtroom and he asked to approach with defense counsel. I told him if he wanted to approach on the same application that had been made many times before and rejected by the Court he should not do so, but if he chose to do so I did not want to see him again in my courtroom. He chose to step up and made the same application that had been made previously many, many times to the Court in the same case and I asked him to leave.

"Yesterday, the next day, the very next day, when I said, 'Do not come back to my court.', rather an overstatement, I must say, I agreed with you there, this being a public courtroom.

"Mr. Brostoff walked into my courtroom and into the well while a case was before the bench. I ordered him out of the well. He refused to go. I ordered him again to leave the well. He refused to go. He told me he was an assistant bureau chief and he could go wherever he liked in this court. I told him he had two choices; he could leave the well through the public door or through the pen door. He said he would leave through the pen door.

"When I held him in contempt it appeared he came to what we shall call his senses. So apparently my holding him in contempt did work to have him obey the mandate of the court."

"A court of record has power to punish for a criminal contempt, a person guilty of * * *

"1. [d]isorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority. * * * [or]

"3. [w]ilful disobedience to its lawful mandate." (Judiciary Law § 750 [A]; *Matter of Katz v Murtagh,* 28 NY2d 234.)

While the contempt power is "a necessary and integral part of the independence of the judiciary" *(Gompers v Bucks Stove*

& *Range Co.,* 221 US 418, 450), it is a "drastic remedy" *(Matter of Spector v Allen,* 281 NY 251, 259), which is "sparingly to be used" *(Gompers v Bucks Stove & Range Co., supra,* at 450). As has been aptly stated by the Court of Appeals of Maryland, "the magnitude of its force demands care and discretion in its use so as to avoid arbitrary, capricious or oppressive application of this power." *(State v Roll,* 267 Md 714, 717, 298 A2d 867, 870; *see also, Liner v State,* 62 Md App 381, 489 A2d 553, *cert denied* 303 Md 471, 494 A2d 939.) Thus, the court's ability to control the courtroom and to compel obedience to its lawful mandate *(see, State of New York v Congress of Racial Equality,* 92 AD2d 815, 817) must be viewed not only in conjunction with the lawyer's duty to obey such mandate but also with the Judge's obligation to "Perform the Duties of His Office Impartially", without personal bias or prejudice (Code of Judicial Conduct Canon 3; *cf., Liner v State, supra).*

While petitioner did not comply with respondent's directive to "[g]et out of the well", there is no evidence in this record that he acted in a contumacious or insolent manner. His response was reasoned and measured as he attempted to frame the issue in a professional rather than personal perspective. Nor was his presence in the well in any way disruptive of the court's proceedings. To the contrary, the ability of a deputy bureau chief to confer on an on-going basis with his trial assistants facilities the workings of the court. The conduct upon which the contempt finding is based took place in a busy arraignment part in which assistant District Attorneys commonly come and go at will. Petitioner states that in his experience assistant District Attorneys are generally permitted to "come and go" in the well and that he is "not aware of any order by Justice Berkman prior to May 23, 1990 restricting any [assistant District Attorney's] entry into the well of the courtroom in which she presides." Respondent does not deny that access by assistants was unrestricted prior to May 23, 1990; nor does she assert that on or after that date she restricted such access to anyone other than petitioner.

Furthermore, the record does not reflect any special circumstance—other than respondent's personal animus—which occasioned her directive. It seems clear that respondent's order to petitioner to "[g]et out of the well" emanated not from any necessity to maintain order and decorum in the courtroom but was, rather, an unwarranted and unreasonable overreaction to petitioner's efforts to obtain certain defendants' cooperation, efforts which respondent found offensive. It is notewor-

thy that on the day before the contempt finding was made, during proceedings which presented an issue concerning cooperation of defendants, respondent had threatened to "have [petitioner] removed from [her] courtroom and barred for all time". Thus, respondent's order—the culmination of a long-smoldering antagonism—was a personal response to petitioner's mere presence and thereby lost the character of a lawful mandate. This is not a case of a lawyer's defiance of a "misguided and erroneous" ruling. *(Matter of Balter v Regan, 63 NY2d 630, 631.)* If petitioner's refusal to comply constituted a contempt, it was a contempt of the individual rather than the office.