■ ROBERT B. CAMPBELL, Appellant-Respondent, v ROGERS & WELLS, Respondent-Appellant. [631 NYS2d 6] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered February 2, 1994, which upon defendant-respondent-cross-appellant's posttrial motion granted a judgment in favor of the defendant dismissing plaintiff's complaint, unanimously reversed, on the law, the facts and in the exercise of discretion, without costs, the complaint is reinstated and the matter remanded for a new trial before a different Justice. Defendant-respondent-cross-appellant's cross appeal from orders of the same court and Justice, entered on or about November 24, 1993, December 1, 1993 and December 10, 1993, unanimously dismissed as superseded by the appeal from the judgment and on the ground that defendant-respondent was not aggrieved thereby (CPLR 5511, 5501 [a] [1]), without costs.

Plaintiff is the majority stockholder, President and CEO of BBC International, Inc., a shoe importing company. The claims of legal malpractice asserted against the defendant law firm arose out of the defendant-respondent's representation of the plaintiff in connection with his acquisition of Amfesco Industries Inc. (Amfesco), a publicly owned shoe manufacturing company in (11 USC) chapter 11 bankruptcy. Three acts of legal malpractice were alleged.

The first involves a personal guarantee issued by the plaintiff. Plaintiff first explored the acquisition of Amfesco Industries in 1986. Initial negotiations failed but were recommenced in 1987. Plaintiff had retained the defendant firm, specifically bankruptcy partner Joseph Levie, to assist him. The negotiations, which took place in September and early October 1987, involved a $6.5 million cash payment of prepetition debt Amfesco was required to make to its creditors.

Plaintiff apparently reached a compromise with Amfesco's creditors, pursuant to which, the amount of the cash payment would remain the same, but payment would be deferred over one year. In exchange for the deferral plaintiff agreed to personally guarantee the payments. Plaintiff alleged that Levie was negligent in that he never advised him, that pursuant to General Obligations Law § 5-701 (a) (2), the oral guarantee of the deferred payments given by plaintiff was not enforceable and that such a guarantee of prepetition debt was extraordinary and, based on plaintiff's superior bargaining position, unneeded.

The second act of malpractice concerns plaintiff's execution of a written commitment to finance Amfesco's reorganization plan and to then purchase the company upon its reorganization. Pursuant to a Management Agreement executed in November 1987, plaintiff was provided with the authority to supervise Amfesco's operations, hire and fire pending the reorganization. Plaintiff also agreed to make an additional $4.5 million available to Amfesco on an unsecured basis. The Management Agreement was approved by the Bankruptcy Court on December 9, 1987 and thereafter plaintiff executed the written commitment. Plaintiff alleged that the defendant committed malpractice by failing to advise him against signing the commitment letter, by not explaining what legal obligations such a letter entailed and by not suggesting to Amfesco's counsel that the deal be consummated without the letter. Plaintiff maintained that he signed the letter without legal guidance, however he acknowledged at trial that he knew that the commitment letter would legally bind him to fund the reorganization. At trial, plaintiff's expert testified that such a commitment letter was not required under the Bankruptcy Code.

The third act of malpractice alleged by the plaintiff concerns plaintiff's desire to withdraw from the deal, expressed to Levie in March 1988 and referred to by the parties as the "Mid-March Conversation". Plaintiff alleged that Levie, in response to his desire to withdraw from the deal, merely told him that if he withdrew and breached the terms of the commitment letter, he would be sued by everyone. Plaintiff alleged that defendant committed malpractice by failing to follow up on the conversation and advising the plaintiff of alternatives. According to the plaintiff, his experts later told him that if he withdrew from the deal and was sued, and the litigation did not settle or Amfesco did not find another buyer, any amounts he would be found liable for would be offset by monies Amfesco owed him pursuant to prior loan agreements plus interest.

As a result of the failed reorganization/acquisition of Amfesco plaintiff's company BBC International, Inc., which had loaned funds to Nasco, a company formed by plaintiff to be the successor to Amfesco if the deal succeeded, filed for chapter 11 bankruptcy in December 1989. Nasco had filed for chapter 11 protection in September 1989. Plaintiff was then personally forced into (11 USC) chapter 7 bankruptcy in January 1990; this was later converted into a chapter 11 bankruptcy. In all, plaintiff alleged that he lost approximately $5.6 million and suffered a $13.1 million diminution of the value of his stock in BBC International, Inc.

The case was tried before Justice Gammerman between November 10, 1993 and December 10, 1993. Plaintiff moved for a mistrial with a new trial to be held before a different Judge arguing that Justice Gammerman improperly interjected himself into the proceedings so as to inhibit the jury's ability to calmly resolve the case. The motion was denied. At the close of plaintiff's case the defendant moved for a directed verdict and the court reserved decision with respect to the claims relating to the guarantee and commitment letter and denied the motion with respect to the mid-March Conversation claim. The motion was renewed at the close of the evidence and the court adhered to its prior decision, and its decision on the motions remained reserved.

After seven days of deliberation the jury reported a three to three deadlock on seventeen of the eighteen special verdict questions submitted. The only conclusion reached by the jury was that Levie was negligent with respect to the "Mid-March Conversation". However, the jury remained deadlocked on the question of whether said negligence caused plaintiff to suffer any injury. The trial court then granted the defendant's motion to dismiss the guarantee and commitment letter claims as a matter of law, finding that plaintiff's decisions with respect to the guarantee and the commitment letter were business decisions, which could not provide a basis for a legal malpractice claim. Defendant then moved to set aside the jury's verdict with respect to the Mid-March Conversation; this motion was denied. The trial court then ordered that there be a new trial restricted to the issues of causation and damages as they related to the surviving Mid-March Conversation claim. The court also ruled that the plaintiff could not recover any amounts based upon the diminution of the value of his stock in BBC International, Inc., on the ground that the evidence was too speculative to make a determination of the reduction in the company's value as well as the reduction in value of the plaintiff's stock.

Defendant then argued that with the measure of damages of the diminution of the value of plaintiff's stock out of the case, the Mid-March Conversation claim should be dismissed since the remaining evidence demonstrated that plaintiff's losses would have been greater if he had withdrawn from the deal. The court granted defendant's motion to dismiss the Mid-March Conversation claim in an order dated December 22, 1993 and directed that a judgment dismissing the action be entered as well.

On appeal plaintiff raises the same issue concerning the trial court's conduct during the trial that was the basis of his motion for a mistrial. Plaintiff specifically contends that, *inter alia*, the court's suggestion of answers for defendant's employee Levie and attempts to rehabilitate this witness, repeated and consistent interruption and attenuation of plaintiff's examination of witnesses, failure to allow plaintiff to give complete responses and criticism of plaintiff's damage claims in the jury's presence demonstrated the court's bias in favor of the defendant. At the outset we note that we have had occasion to reverse and remand matters back to this same trial court in the past based upon conduct similar to that alleged by the plaintiff (*see, Schaffer v Kurpis*, 177 AD2d 379; *Harding v Noble Taxi Corp.*, 182 AD2d 365). However, each matter must be reviewed independently in light of the rule that a trial court has broad authority to control the courtroom, rule on the admission of evidence, elicit and clarify testimony, expedite the proceedings and to admonish counsel and witnesses when necessary (*Matter of Brostoff v Berkman*, 170 AD2d 364, 365, *affd* 79 NY2d 938). Upon review of the trial court's conduct in this matter it appears that as in *Carson v New York City Health & Hosps. Corp.* (178 AD2d 265), the trial court questioned numerous witnesses, dictated the length of answers, at times suggested answers, and generally interjected itself into the proceedings. While in *Carson* (*supra*), a complex malpractice matter, it was concluded that the court's conduct was intended to clarify the proceedings and did not interfere with the presentation of the evidence, the same cannot be said of this case. While we find that no bias or prejudice was displayed, we conclude that the court's conduct could not have allowed the jury to review the case in the "calm untrammelled spirit necessary to effect justice" (*Kamen Soap Prods. Co. v Prusansky & Prusansky*, 11 AD2d 676).

The court's determination, after the jury was deadlocked, that the basis of the guarantee and commitment letter claims constituted business decisions and its award to defendant of

judgment on these issues as a matter of law, was error. To be entitled to a judgment as a matter of law, the defendant-movant must demonstrate that the plaintiff failed to make out a *prima facie* case; the plaintiff's evidence must be accepted as true, and the plaintiff must be given the benefit of every favorable inference which can reasonably be drawn from the evidence (*Windisch v Weiman*, 161 AD2d 433, 437). The motion should be granted only if there is no rational process by which the jury could find for plaintiff as against the moving defendant (*supra*, at 437; *Harding v Noble Taxi Corp.*, *supra*, at 369). In the present matter plaintiff's allegations made out a *prima facie* case of malpractice. While an attorney has no duty to advise a client with respect to the feasibility of a financial investment (*Vitale v Coyne Realty*, 66 AD2d 562, 567), an attorney is required to advise clients of the legal consequences of their actions (*Camarda v Danziger, Bangser & Weiss*, 167 AD2d 152). The trial court submitted the issues concerning whether the defendant provided the plaintiff with legal or business advice to the jury, thus acknowledging that the determination was a jury question. The fact that the jury remained deadlocked three to three demonstrates that there was a rational process by which at least half of this jury found for the plaintiff.

The trial court's determination that the evidence concerning the diminution of BBC International, Inc. was too speculative to form the basis of a determination as to the actual reduction in the value of the corporation and the concomitant reduction in value of its stock, was also error. While damages for lost profits etc. must be capable of proof with reasonable certainty absolute certainty is not required; such damages must be capable of measurement based upon known reliable factors without undue speculation (*Ashland Mgt. v Janien*, 82 NY2d 395, 403). We find the valuation method employed by the plaintiff's expert to determine the amount of the diminution of plaintiff's interest in BBC International, Inc., did not involve undue speculation (*see, Indu Craft v Bank of Baroda*, 47 F3d 490).

We have reviewed the other claims raised by the parties and find that they are without merit or need not be reached. Concur—Rubin, J. P., Ross, Nardelli and Mazzarelli, JJ.