■ STATE OF NEW YORK, Appellant, v EXXON CORPORATION, Respondent, et al., Defendants. (And a Third-Party Action.) [777 NYS2d 539]—

Mercure, J. Appeal from a judgment of the Supreme Court (Spargo, J.), entered July 31, 2002 in Albany County, which directed a verdict in favor of defendants and third-party defendants.

In January 1984, a representative of plaintiff was notified of the presence of gasoline fumes in the basement of a residence located near two gas stations in the Village of Farmingdale, Nassau County. The gas station to the north was owned by defendant Exxon Corporation. In response to the complaint, a Department of Transportation (hereinafter DOT) employee investigated and found gasoline floating in two sniffer wells lo-

cated at the southern gas station (hereinafter the Dart station). Thereafter, DOT installed a number of monitoring wells to determine the source of the gasoline contamination. In October 1984, DOT determined that the Exxon station was the source of the gasoline contamination at the Dart station. In April 1985, DOT notified Exxon that it had 10 days to disprove DOT's findings or begin clean-up of the site. After Exxon disputed the findings and refused to remediate the spill, the Department of Environmental Conservation began remediation of the site in 1988.

In 1993, plaintiff commenced this action against Exxon, among others, pursuant to Navigation Law article 12 to recover costs incurred in the clean-up of the gasoline contamination and statutory penalties. Exxon commenced a third-party action against the owners of the Dart station for indemnification and contribution. A 2002 jury trial ultimately culminated in a 4-2 vote in favor of plaintiff on the question of whether Exxon caused or contributed to the spill. Although the jury unanimously answered the uncontested question whether a spill occurred, it left unanswered questions establishing the amount of plaintiff's costs, apportioning liability among defendants and assessing penalties. Supreme Court then granted a motion by defendants for a directed verdict over plaintiff's objection that a new trial was required due to the jury's failure to reach a verdict. The court stated that "as a matter of law . . . there is a verdict . . . [t]hat the plaintiff . . . failed to prove its case as to the defendants as found by the jury, and the [c]ourt as a matter of law agrees that there is not the commensurate measure of proof by which the plaintiff should prevail in this action." The court entered a judgment in favor of defendants and third-party defendants. Plaintiff appeals.

"A verdict may be rendered by not less than five-sixths of the jurors constituting a jury" (CPLR 4113 [a]). Therefore, as plaintiff contends, the jury's 4-2 vote in favor of plaintiff was tantamount to no verdict (see Novo Corp. v Consolidated Edison Co. of N.Y., 53 AD2d 570, 571 [1976] [describing a vote of less than a five-sixths majority as "a nullity"]; Fairchild v Cervi Bros. Trucking Co., 1 AD2d 508, 511 [1956], lv denied 1 NY2d 644 [1956] [describing a jury vote of less than the required majority as the "absence of a verdict"]). CPLR 4113 (b) sets forth the procedure to be followed when jurors disagree: "Where five-sixths of the jurors constituting a jury cannot agree after being kept together for as long as is deemed reasonable by the court, the court shall discharge the jury and direct a new trial before another jury" (emphasis added).

We agree with plaintiff that on this record Supreme Court erred in purporting to grant a directed verdict in favor of defendants pursuant to CPLR 4404 (a) in the absence of a jury verdict. While CPLR 4404 (a) permits a court, in an appropriate case, to set aside a verdict—once a verdict is returned—and enter judgment in a party's favor as a matter of law, that provision and CPLR 4113 (b) provide "no alternative" where the jury fails to reach a verdict: "in those circumstances [a court's] only course [is] to direct a new trial" (*Slusarczyk v Slusarczyk,* 41 AD2d 593, 593 [1973]; *see Tannenbaum v Hoar,* 26 AD2d 980, 980 [1966]; *Campbell v Rogers & Wells,* 218 AD2d 576, 579-580 [1995]; *see also* 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 4113.05 ["While CPLR 4113 (b) vests the trial judge with discretion to determine when the jury has become deadlocked, it provides that when that point is reached the court must discharge the jury and direct a new trial before another jury."]). Inasmuch as the jury did not return a verdict, we must reverse the judgment and remit the matter for a new trial.

In light of our decision that there must be a new trial, we deem it appropriate to address certain of the remaining issues raised on appeal. We agree with plaintiff that Supreme Court erred in precluding it from offering evidence concerning the area south of the Long Island Railroad tracks and evidence relating to petroleum spills that occurred after 1991. Evidence that dissolved gasoline product caused fumes in homes south of the railroad tracks was relevant to the manner in which plaintiff learned of the spill, the manner of remediation and the question of whether a discharge occurred. Further, the evidence was probative of plaintiff's contention that the railroad tracks caused floating gasoline product flowing from the Exxon station to the Dart station to pool beneath the Dart station. Because "its probative value [was not] substantially outweighed by the danger that it [would] unfairly prejudice the other side or mislead the jury" (*People v Scarola,* 71 NY2d 769, 777 [1988]), the evidence should have been admitted. Similarly, to the extent that evidence of post-1991 discharges was relevant to establishing the source of the pre-1991 discharges outlined in the complaint and the bill of particulars, as well as defendants' liability for those discharges, that evidence should also have been admitted.

Finally, we agree with plaintiff that Supreme Court improperly granted Exxon's motion in limine to cap the amount of statutory penalties at $1 million, the amount set forth in the ad damnum clause of plaintiff's complaint. "[I]n the absence of prejudice to the defendant, a motion to amend the ad damnum

clause, whether made before or after the trial, should generally be granted" (*Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18, 23 [1981]). Delay in seeking such relief or economic impact through exposure to increased liability alone will not bar amendment of an ad damnum clause, instead it must be shown "that the defendant has been hindered in the preparation of his [or her] case or has been prevented from taking some measure in support of his [or her] position" (*id.* at 23; *see State of New York v Super Value*, 257 AD2d 708, 710 [1999], *lv denied* 93 NY2d 815 [1999]). Here, plaintiff sought statutory penalties of $25,000 per day from January 9, 1984 in its complaint and Exxon concedes that plaintiff indicated prior to trial that it intended to increase the amount of penalties sought. Under these circumstances and given that Exxon has failed to show how removing the limitation in the ad damnum clause would have hindered the preparation of its case, we conclude that Supreme Court abused its discretion in failing to allow plaintiff to amend the ad damnum clause (*see State of New York v Super Value, supra* at 710).

We have considered the parties' remaining arguments and conclude that they are either meritless or rendered academic by our decision.

Cardona, P.J., Carpinello and Rose, JJ., concur; Mugglin, J., not taking part. Ordered that the judgment is reversed, on the law, and matter remitted to the Supreme Court for a new trial, with costs to abide the event.