JAMES MATTHEW LONG *v.* STATE OF MARYLAND

[No. 858, September. Term, 1975.]

*Decided May 7, 1976.*

The cause was argued before MOYLAN, MENCHINE and MOORE, JJ.

*Richard A. Cooper, Assigned Public Defender,* for appellant.

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Naji P. Maloof, State's Attorney for Calvert County* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

James Matthew Long was convicted by a jury in the Circuit Court for Calvert County on a charge of grand larceny. He was sentenced to imprisonment for a term of eight years.

On appeal, appellant contends, *inter alia,* that:

"The trial judge's order, given in the presence of the jury, that a defense witness be taken into custody by the sheriff following his testimony prejudiced the appellant's right to be fairly tried by an impartial jury."

John Long, father of appellant, had been called to the stand as a witness for the defense. There were three areas of misunderstanding or contradiction in the course of his testimony. They were: (a) whether a white, 1963 Chevrolet automobile, fitting the description of the vehicle used in the larceny, had been in use on the date in question; (b) whether the son had been at home that day; and (c) whether or not he had seen his son on the day of the larceny.

At one point in his testimony the witness had stated that the automobile tags had been removed from the vehicle and sent back to the Commissioner of Motor Vehicles. Later testimony indicated uncertainty or equivocation as to that fact. The witness did not, however, retreat from his testimony that the car had not been used on the crime date.

The following excerpts from the record will set the background in which the alleged impropriety occurred:

"Q   Has he [the son] ever driven the car without tags? You don't know that either?

A   That car hadn't left the yard.

Q   You were there all day that day?

A   Can you automatically park a car in the same tracks and don't have no track behind it?

JUDGE: He didn't ask you that. He asked you were you there all day. Answer the question.

THE WITNESS: Yes, I was there all day.

\* \* \*

Q   You never went away from that house, is that right?

A   I'm away sometime but I would know if the car was moved.

Q   You would know if the car was moved?

A   That's right.

\* \* \*

Wasn't no tracks behind it and none in the front.

JUDGE : Ask your next question.

MR. MALOOF:

Q   Sir, do you have any idea why your son would tell the Police Officer that he was in the house that very day when the Police Officer was asking you where he was?

Q   Answer the question, sir?

A   I wouldn't know who was at my house if I went to the store and come back.

Q   Well sir, was he there on that day, was James in your house on August the 10th, 1973?

A   I can't tell you who was in the house on- - -

Q   Well, sir, you just testified under oath that he wasn't in your house- - -

A   I said I couldn't tell you that. You can't tell me

that I'm testifying under oath. I'm outside and come in.

Q   Sir, do you realize you're under oath?

A   I know I'm under oath and I'm going to tell you the truth. I'm- - -

Q   Sir, do you remember saying- - -

A   I'm all- - -

JUDGE:  **Just listen to the question.**

THE WITNESS:  I'm answering him.

JUDGE:  **Shut up and listen to the question.**

MR. MALOOF:

Q   Sir, do you remember saying just ten minutes ago that absolutely James was not at your house that day?

A   As I seen.

Q   As you seen?

A   That's right and I'm telling you.

Q   Sir, did you have your eyes open?

A   Did you understand what I was asking you? I'm- - -

Q   I asked you did you have your eyes open- - -

A   When I'm away from the place and come in, definitely I couldn't say, Judge,- - -

JUDGE: You are saying now you were away from the place?

THE WITNESS:    I had been away and come in.

*JUDGE:  Do you want him held, Mr. Maloof?*

*MR. MALOOF:  Yes, Your Honor. I do want him held.*

JUDGE:  **All   right.   Go   ahead   and** finish your questions.

THE WITNESS: I say I was away and I come in.

MR. MALOOF:

Q   How many times were you away that day, sir?

A   Well, I occasionally go to the store to get something for the farm. I raise tobacco. I'm disability [sic].

\* \* \*

Q   Did you see him on that day?

A   I did not see him that day." (Emphasis added.)

The witness also had disputed the testimony of a state trooper who had said that the vehicle in question was being washed when the officer visited the Long farm on the day of the larceny. He testified:

"Q   You're positive no one was washing it?

A   I didn't see anybody washing the car.

Q   You were there?

A   When I leave I come in on the back end where I'm farming at and I'm working in the field and I can look straight up in the yard and see anything that's up on my place.

Q   And you saw the Police Officer come into your yard?

A   Yes, and came up and I had the keys to the car.

\* \* \*

Q   And you're now saying that no one was washing the car at that time?

A   No, wasn't nobody washing the car. The car had been washed some but definite I did not see James there."

Immediately following the last question to the witness the trial judge said:

*"Very well, you report to the Sheriff. Sheriff take him in custody."* (Emphasis added.)

Defense counsel then addressed the court as follows:

"Your Honor, I would at this time make a motion in which occurred concerning the testimony and the fact that Mr. Long, John Long, as a witness was held.* I feel that the matter of him being instructed by the Court to be held, the inference being that he may have perjured himself. That being done in front of the Jury is prejudicial to the defendant and I would ask for a Mistrial on that basis."

The trial judge responded as follows:

"Well, the Jury heard his testimony and as far as his conduct is concerned, the only thing I told him to do is report to the Sheriff. The Jury doesn't know whether he is reporting for Perjury or Paternity or owes a bill or what. I don't believe that has anything to do with the outcome of this case. The Jury certainly could not possibly believe both the statements he made. They couldn't believe him when he said he was there all day, and then turned around and said he went to the store twice. One or the other of those has got to be wrong and I think it is a question of credibility but not grounds for mistrial. I will deny the motion."

An annotation in 127 A.L.R. 1385,[1] "Statements, comments, or conduct of court or counsel regarding perjury, as ground for new trial or reversal in civil action or criminal prosecution other than for perjury" discusses in considerable depth the effect, in jury trials, of indications by the trial court by word or action, that a witness will be committed for perjury. The general rule is thus stated:

"It is a general rule that the court's commitment for perjury of a party or witness in the presence or hearing of the jury, or under circumstances calculated to come to their knowledge, or the

---

* Language is as it appears in transcript.
1. See, particularly, pp. 1392-1398.

making of an order therefor, in like situations, constitutes reversible error, as an encroachment upon the right of the jury freely to consider a witness's testimony, uninfluenced by the court's unauthorized direction or opinion as to the credibility of the witness or the weight of the testimony." 127 A.L.R. at 1394.

That Maryland subscribes to the stated general rule is apparent. In *Newton v. State,* 147 Md. 71, 127 A. 123 (1924), the trial judge commented in the course of the testimony of a witness: "You know better than that, Mr. Gillespie." Conviction was reversed because of the remarks of the trial judge, the Court saying at 87-88 [130]:

"The remark involved in the forty-ninth exception was equivalent to a statement by the court that the witness Gillespie had testified to what he knew to be untrue, and was a direct reflection upon his credibility. That such is its effect is admitted by the State in its brief, where this frank but singular statement is found: 'The answers of the witness to this question were clearly evasive and certainly merited the comment of the court. Inasmuch as the only effect a comment could have had was to affect the credibility of the witness before the jury and did not of itself cast any reflection upon the traverser, certainly the traverser was not prejudiced thereby.' Inasmuch as the traverser's case depended upon the credibility of his witnesses, it is not easy to see how anything could possibly prejudice him more than a conclusion that their testimony was not credible, and there was in our opinion error in this ruling."

In *Elmer v. State,* 239 Md. 1, 209 A. 2d 776 (1965), the trial judge's comments had reflected adversely upon a witness. Although defense counsel had not moved for a mistrial or to strike the judge's comments, the Court of Appeals reversed. After discussing numerous Maryland cases dealing with the

subject, the opinion by Sybert, J. for the Court said at 10 [781-82]:

"When the trial judge declared Davis a witness hostile to the State, after he had been called by the State and had given testimony favorable to the defense, the judge's remark clearly indicated his disbelief of the witness and unquestionably influenced the jury's appraisal of the credibility of the witness. It was, of course, the function of the jury alone, as the triers of the facts, to weigh and determine that factor. The rule in such cases was stated by this Court in *United Rys. Co. v. Carneal*, 110 Md. 211, at pp. 232-233, 72 Atl. 771 (1909), and quoted in *Marino v. State, supra* (at p. 110 of 171 Md.), as follows:

'* * * It is undoubtedly true that a trial Judge, because of his high and authoritative position, should be exceedingly careful in any remarks made by him during the progress of a trial, either in passing upon evidence or ruling upon prayers, and should carefully refrain, either directly or indirectly, from giving expression to an opinion upon the existence or not of any fact, which should be left to the finding of the jury * * *.'

The rule was applied in *Newton v. State*, 147 Md. 71, 86-88, 127 Atl. 123 (1924), where this Court held (upon objection, unaccompanied by any motion) that remarks made by the trial court in the presence of the jury which directly reflected upon the credibility of a defense witness constituted prejudicial error.

"We think that the appellant must be granted a new trial. It should be noted that we are not deciding that the trial judge was wrong in concluding the witness was hostile, but rather that, even though his conclusion was correct, the prejudicial error was committed by not making the

declaration of the witness' hostility (if any such declaration was felt necessary) out of the presence of the jury."

We believe that the trial court's comments and directions to the sheriff could be interpreted only as indicative of his disbelief of the witness and as expressing a purpose to subject that witness to prosecution for perjury.

To follow such a course in the presence of the jury constituted prejudicial error.

Because we find it necessary to reverse and remand for a new trial, we do not reach the other issues raised on appeal.

*Judgment reversed.*
*Case remanded for new trial.*