589 A.2d 551

**Kenneth SUGGS**

v.

**STATE of Maryland.**

**No. 1016, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 8, 1991.

Arthur A. DeLano, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty., for Baltimore City on the brief), Baltimore, for appellee.

Argued before BISHOP, ROSALYN B. BELL and FISCHER, JJ.

Opinion by FISCHER, Judge.

Kenneth Suggs, appellant, was charged with three counts of unauthorized use. On June 27, 1990, he was tried by a jury in the Circuit Court for Baltimore City and was convicted of all three counts. He was committed to the custody of the Division of Correction for four years, with all but one year suspended in favor of five years probation.

Appellant raises the following issues for our review:

## I.

Did the trial judge improperly deny appellant his right to a fair trial by directly impugning the integrity of defense counsel?

## II.

Did the trial judge improperly deny the appellant's right to cross-examine a witness about his bias, interest, or motive to falsify?

## III.

Did the Court err in admitting evidence of other crimes.

## IV.

Did the trial judge err in refusing to recuse itself?

## V.

Did the trial judge abuse his discretion in denying appellant's request for a postponement?

■ This case hinges on the trial court's reaction to the cross-examination of Dwayne Tolbert by defense counsel. On cross-examination, defense counsel sought to inquire into whether criminal charges were pending against Tolbert, a State's witness. The cross-examination occurred as follows:

[MR. ALLEN:] Do you have any cases pending a [sic] criminal court of Baltimore City?

THE COURT: Mr. Allen, Mr. Allen, Mr. Allen.

MR. STANLEY: Objection.

THE COURT: Come up please.

(COUNSEL AND DEFENDANT APPROACH THE BENCH AND THE FOLLOWING ENSUED.)

THE COURT: Mr. Allen, I heard you telling your client that you have been in this business for 42 years.—overheard you saying that. For 42 years you have known better than to ask that question that you are asking.

MR. ALLEN: Yes, Your Honor.

THE COURT: Don't you ever do that again in this court. You know better than that.

MR. ALLEN: Yes, Your Honor.

THE COURT: Now, what are you talking about? How is it ever—when somebody has a case pending to impeach the—of impeachment? How? Never is.

MR. ALLEN: You are right, Your Honor. I apologize to the court. I apologize to my brother here.

MR. STANLEY: —prejudicial, I think it would be appropriate to—this trial.

THE COURT: —of a case pending—

MR. STANLEY: Your Honor, it is a case with Mr. Suggs. Mr. Suggs has another case coming up. Absolutely—as far as that 2001—he stole the [furnace] out of 2001 North Avenue and took it to another place and he is going to be tried on that by me coming up.

MR. ALLEN: He has already convicted him.

MR. SUGGS: —

MR. ALLEN: Keep still.

THE COURT: And is this gentleman charged with stealing?

[MR. STANLEY]: He was involved in it. He is the one who took the police to it and showed them where it was and he got the serial number off of it. And he went back—

MR. ALLEN: This is another case. It doesn't have anything to do with this case, Your Honor.

MR. STANLEY: It does because you brought it up.

MR. ALLEN: I brought what up?

MR. SUGGS: —

MR. STANLEY: Your Honor, if I may make a suggestion. If we can—withhold a ruling, I might have requested a mistrial be noted, and after the case is finished then I would request a ruling on my motion for a mistrial.

THE COURT: All right. You all go back to counsel table.

(COUNSEL AND DEFENDANT RETURNED TO THE TRIAL TABLE.)

THE COURT: *Members of the jury, the comment Mr. Allen made was highly inappropriate.* This witness has

not been convicted of any criminal activities, and that should not have been asked. Please disregard that comment by Mr. Allen. *Mr. Allen, don't ever do that again in this courtroom.*

MR. ALLEN: No, Your Honor.

THE COURT: Next question, please.

[MR. ALLEN]: Mr. Tolbert, do you have any cases pending in court in which Mr. Suggs is a prosecuting witness concerning a ladder? Do you recall that?

MR. STANLEY: Your Honor, I object. This is absolutely unconscionable, what is going on right now. Your Honor, I respectfully move for a mistrial.

THE COURT: *Sheriff, take a hold of Mr. Allen, please. Members of the jury, go to the jury room please.* Mr. Allen—

MR. ALLEN: Yes, Your Honor.

THE COURT: I have just told you not to do that again, ever, and you did the same thing. It is highly inappropriate to bring up any criminal charges not yet resulting in a conviction, and even if it results in a conviction, it has to fit into a category of a felony, treason, or an infamous crime.

There has been no indication that this person is convicted, has been convicted, of a crime in that category. You may ask him that if you wish, and if he says, yes, that is the end of it. And if he says no, you can prove it otherwise if you have a certified copy.

You have been a member of the bar for 42 years and it pains this judge to see [you] go out that way. This case is over. *You be [sic] barred from this courtroom forever and ever and ever.*

MR. ALLEN: Yes, Your Honor.

THE COURT: Why [do] you persist in doing this?

MR. ALLEN: Your Honor, it is a very difficult case and Mr. Suggs is a very difficult client, and I apologize for any inconvenience I have caused anybody if Your Honor please.

THE COURT: Mr. Suggs is feeding you questions. You made a response to him during the course of the trial and the jury probably heard that. He asked you some question. I don't know what he asked, but you told him "Because I am the lawyer and I have been doing it for 42 years."

He is probably feeding you the questions that you are getting in trouble about now. And a lawyer who allows a client to do that, jeopardizing his own status at the bar, and you have just had your [sic] jeopardized in this courtroom because you can't come back in here.

MR. ALLEN: —, Your Honor.

THE COURT: Sir. Since you are age 18 or over, were you represented by a lawyer—have you ever been convicted of a crime involving moral turpitude? Moral turpitude means something to indicate that you are a person of low moral character, such as a theft, a robbery, a murder, or an infamous crime, a felony, or treason? [1]

THE WITNESS: I was charged with accepting, um, stolen goods, about eight years ago.

THE COURT: But you weren't convicted of it?

THE WITNESS: I was given a fine.

THE COURT: All right.

THE WITNESS: —judgment before verdict?

MR. STANLEY: Judgement before verdict?

THE WITNESS: Yes.

THE COURT: Mr. Allen, you cannot inquire any more about this witness's involvement in any criminal activity whatsoever unless you have a certified copy of a conviction to prove that he has just not told the truth.

MR. ALLEN: I will not inquire, Your Honor.

---

**1.** The trial court incorrectly referred to crimes of moral turpitude as a category of offenses admissible for impeachment purposes. To the contrary, infamous crimes may be admitted to impeach a witness. Md.Cts. & Jud.Proc.Code Ann. § 10–905. For a discussion on this point, *see Prout v. State,* 311 Md. 348, 358–363, 535 A.2d 445 (1988).

THE COURT: Bring that jury back, please. Now if you do that again, Mr. Allen, I am putting you in jail.

MR. ALLEN: I understand, Your Honor.

(JURY ENTERED THE COURTROOM)

THE COURT: Members of the jury, you will note that the judge scolded Mr. Allen. Please don't hold that against him or otherwise let that interfere in your judgment. You are concerned with whether or not this defendant, [sic] guilty or not guilty, of unauthorized use of a van, unauthorized use of a beeper, and unauthorized use of keys.

*The reason for the judge's action is because the defendant's lawyer was about ten miles out of limit.* The law is that you cannot bring up anything concerning one's past unless that results in a conviction, and a conviction has to be of a crime involving moral turpitude, a felony, or an infamous crime, to relate to credibility.

This witness has not been convicted, period, and it is improper for one to imply that. And how you show convictions is through a certified copy of a court document. Mr. Allen doesn't have that because it doesn't exist. *So please disregard the sideshow, if you will, and concentrate on whether or not the State has proven this defendant guilty beyond a reasonable doubt of offenses he is charged with.*

MR. ALLEN: I have no further questions, Your Honor. (Emphasis added).

## I.

Unfortunately neither the Court nor the Assistant State's Attorney recognized that Mr. Allen's question asked after the bench conference was quite different from that asked immediately prior to the bench conference. The initial question appeared to attempt to bring out criminal charges pending in general. Such an inquiry is, of course, not ordinarily permitted, and the trial judge was correct in intervening. The second question, however, clearly sought

to inquire into possible bias on the part of the witness, and, therefore, was entirely proper. It appears that the emotional overreaction of the Assistant State's Attorney to Mr. Allen's innocent question may have precipitated an equal overreaction on the part of the trial judge. Appellant asserts that his right to a fair trial was denied because the trial judge failed to "discharge his duties in a 'calmly judicial, dispassionate, and impartial' manner" as required under *Spencer v. State*, 76 Md.App. 71, 77, 543 A.2d 851 (1988) (quoting *Frantz v. United States*, 62 F.2d 737, 739 (6th Cir.1933)). Appellant claims that the trial judge improperly directed comments from the bench toward defense counsel, which directly impugned the integrity of the defense counsel. *Spencer*, 76 Md.App. at 78, 543 A.2d 851. *See State v. Runge*, 317 Md. 613, 624, 566 A.2d 88 (1989). We agree with the appellant.

■ When the court commanded the sheriff to "take a hold of Mr. Allen, please," the jury was still in the courtroom.[2] The sheriff moved immediately behind Mr. Allen in a position to exercise control over him, and Mr. Allen was gathering his papers. When the jurors returned, the court informed them, "The reason for the judge's action is because the defendant's lawyer was about ten miles out of limit." Shortly thereafter the court asked the jury to "disregard the sideshow." This instruction did little, if anything, to remedy the prejudicial effect of the court's comments. As we announced in *Liner v. State*, 62 Md.App. 381, 392, 489 A.2d 553 (1985), "A judge may, and should, be firm; but he or she is not entitled to be a tyrant."

Under the totality of these circumstances, we hold that the trial judge's comments painted such a prejudicial portrait of the defense counsel as to deny appellant his right to a fair trial.

---

**2.** Appellant's counsel, at oral argument, stated that the videotape of the proceedings showed that the jury was still in the courtroom. We have reviewed the tape, and he is correct.

■ The State argues that under Md.Rule 8–131(a)[3] appellant's failure to object to the court's action precludes appellate review of this issue. We disagree. It can be inferred from the record that appellant's counsel did not object because he reasonably feared that he would personally incur the greater wrath of the already outraged trial judge.[4] Indeed, by trying to appease the court, defense counsel may well have acted in his client's best interest.

## II.

■ Appellant further contends that the trial judge improperly restricted the cross-examination of prosecution witness Dwayne Tolbert. Appellant argues that Tolbert should have been required to answer whether there were any cases pending against him in which the appellant was a witness for the prosecution. We agree.

The Confrontation Clause of the Sixth Amendment, made applicable to the states through the Fourteenth Amendment, guarantees the right to cross-examine a witness about his bias, interest, or motive to falsify. This right is also guaranteed by Article 21 of the Maryland Declaration of Rights. *Brown v. State*, 74 Md.App. 414, 418–19, 538 A.2d 317 (1988). It is possible that Tolbert testified against the appellant in order to satisfy his own vindictive grudge. As a result, under *Smallwood v. State*, 320 Md. 300, 577 A.2d 356 (1990), appellant had "a right to demonstrate this prejudice to the jury so that the jurors could accurately weigh the witness's testimony." This right is also dis-

---

3. Md.Rule 8–131(a) provides in relevant part: "Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court ..."

4. In *Liner v. State*, 62 Md.App. 381, 392, 489 A.2d 553 (1985), we ruled that the trial judge acted in an "arbitrary, capricious [and] oppressive" manner when he imposed three separate contempt orders on defense counsel. A careful reading of the case reveals that the lawyer did not waive appellate review by failing to object to the court's conduct. Apparently, counsel reasonably feared that any objection would result in the imposition of a more severe penalty personally against him and to the detriment of his client.

cussed in *Johnson and Walters v. State*, 30 Md.App. 512, 516–17, 352 A.2d 371 (1976):

> The test of admissibility, therefore, is whether the question asked is directed at eliciting from a prosecution witness the fact that he may be under pressure to testify favorably for the State, as when he is under formal accusation, and/or incarceration awaiting trial. We do not mean to imply that any time a witness testifies against a criminal defendant his entire record of previous arrests becomes relevant to the inquiry. Only where there is some present possibility of coercion should such cross-examination be allowed.

The record previously cited disclosed that Tolbert and Suggs were both "involved" in another pending theft case. As a result, appellant should have been allowed to cross-examine Tolbert about that case. The court improperly denied this right.

■ The State urges that this issue is not preserved for appellate review because defense counsel failed to make a proffer of what he sought to elicit on cross-examination. *Mack v. State*, 300 Md. 583, 603, 479 A.2d 1344 (1984) ("[T]he question of whether the exclusion of evidence is erroneous and constitutes prejudicial error is not properly preserved for appellate review unless there has been a formal proffer of what the contents and relevance of the excluded testimony would have been.").

The record reflects, however, that defense counsel failed to make a proffer for the same reason that he failed to object to the court's impropriety; he was reasonably fearful of being held in contempt by the court. *See* Footnote 2, *supra*. In the first bench conference, the judge unambiguously expressed his extreme displeasure with the defense counsel's performance stating, "[D]on't ever do that again in this courtroom." When defense counsel rephrased his question to the witness, the court, in the presence of the jury, commanded the sheriff to "take a hold of Mr. Allen." In the conference that followed, the judge told counsel that

he was "barred from this courtroom forever and ever and ever." The court also informed the jury that "defendant's lawyer was about ten miles out of limit."

We, therefore, disagree with the State's assertion that "At the bench the court afforded defense counsel every opportunity to make a complete proffer of the relevance of the question." For the reasons stated, we excuse appellant's failure to make a proffer.

Accordingly, we conclude that the trial judge denied appellant's right to a fair trial by directly impugning the integrity of defense counsel. We elect to review this issue despite appellant's failure to object to the court's action. Furthermore, the trial judge improperly denied the appellant's right to cross-examine a witness about the witness' bias, interest, or motive to falsify. Appellant did not waive our review of this issue, under the facts and circumstances of this case, by failing to make a proffer of what he sought to elicit on cross-examination.

In light of these conclusions, it is not necessary for us to address the other issues raised by appellant.

JUDGMENT REVERSED.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR NEW TRIAL.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.