722 A.2d 873

John Howard JOHNSON

v.

STATE of Maryland.

No. 51, Sept. Term, 1998.

Court of Appeals of Maryland.

Jan. 13, 1999.

Deborah Liu (William H. Murphy, Jr., William H. Murphy, Jr. & Assoc.), Baltimore, for petitioner.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., on brief), Baltimore, for respondents.

Argued before BELL, C.J., RODOWSKY, CHASANOW, RAKER and CATHELL, JJ., ROBERT L. KARWACKI, Judge (retired), Specially Assigned, and ELLEN L. HOLLANDER, Judge, Specially Assigned.

CATHELL, Judge.

The conduct of the presiding trial judge in this case requires us to reverse petitioner's criminal conviction.[1] Petitioner asks us to determine whether a "presumption of prejudice" is created by inappropriate conduct such as the conduct that occurred in this case or whether a stricter standard of "actual prejudice" must be demonstrated before a reversal is warranted. Because we believe petitioner suffered actual prejudice at his trial below, we shall not address whether a "presumption of prejudice" would exist.

## BACKGROUND

We first shall review briefly the facts leading up to the trial. Petitioner John Howard Johnson owned and managed a 7–11 convenience store in Baltimore City. On July 24, 1993, while he was conducting a sales transaction with a customer, petitioner allegedly observed the victim, Andre Burton, shoplifting some goods. Petitioner ran over to Burton and attempted to restrain him, but Burton freed himself and fled the store.

After quickly completing the sale interrupted by the altercation, petitioner armed himself with a handgun and left the premises in his car to search for the alleged shoplifter. Petitioner eventually found and confronted Burton, forced him into petitioner's car at gunpoint and, holding him there, drove away. At some point, Burton attempted to flee. Petitioner shot Burton in the back either while he was exiting petitioner's car or immediately thereafter. According to the defense,

---

1. The conduct of defense counsel, if addressed, must be initially addressed in another forum.

the gun accidentally discharged as it became entangled in the straps of a bag Burton attempted to take with him as he fled. Wounded, Burton escaped to a nearby gas station for help but died there before help could be rendered. The defense asserted at trial that petitioner's gun went off accidentally and that he left the scene unaware that Burton had been shot.

Petitioner was indicted in the Circuit Court for Baltimore City of first degree murder, unlawful use of a handgun in the commission of a felony, and illegally wearing and carrying a handgun. A second indictment charged petitioner with kidnaping and the two proceedings were joined. Petitioner was tried by a jury, which convicted him of involuntary manslaughter, illegally wearing and carrying a handgun, and kidnaping. The jury failed to render a verdict as to the unlawful use of a handgun charge. The defense attorney filed a timely notice of appeal to the Court of Special Appeals on petitioner's behalf, but that appeal was dismissed subsequently because a timely brief in conformance with the requirements of Rule 8–503 was not filed. Petitioner, however, was granted post-conviction relief by the Circuit Court for Baltimore City due to ineffective assistance of counsel in that appeal. The remedy granted was this belated appeal. The Court of Special Appeals affirmed petitioner's convictions and we subsequently granted certiorari.

Petitioner argues several points on appeal, but his central claim and the only one we shall concern ourselves with is the repeated allegedly inappropriate conduct by the trial judge that, petitioner argues, denied him the right to a fair and impartial trial.

The trial commenced, as it ended, with continuous, contentious side disputes between defense counsel and the trial judge. Even during his opening statement, defense counsel not only was threatened with contempt of court in the presence of the jury, but was told by the trial judge that if she were to find him in contempt, she would do so in front of the jury.

[DEFENSE COUNSEL]:

. . . .

Now, that's the procedure. Now, during the case—and different judges handle it differently. Some judges simply say "overruled" or "sustained." You may find that this judge makes comments.

THE COURT: . . . [D]on't comment on my practice or things I do.

. . . .

. . . I—it is not appropriate for you to distinguish my Court from any others as far as the jurors are concerned.

[DEFENSE COUNSEL]: Now, if it please the Court, we should take a balanced view, with as a[sic] little intervention as possible, except to call the balls and strikes, but I'm afraid there is going to be a lot of intervention.

THE COURT: . . . I asked you, and I'm going to insist on telling you that you are not to comment about whatever you think of my way of conducting my court.

[DEFENSE COUNSEL]: Very well.

THE COURT: The jurors are to take what they hear in this courtroom and not hear it from you.

[DEFENSE COUNSEL]: And, of course, the law is that whoever is presiding should—if they make comments, should—

THE COURT: . . . [I ]f you do any more of this, I am going to find you, in front of this jury, in contempt of the Court. Now, stop it right now, and stop it throughout the trial.

[DEFENSE COUNSEL]: And counsel has the duty to make objections if counsel feels that the presiding authority has gone too far. There will be a lot of objections in this case.

Now, we are—and I want to explain that because if you don't explain it to the jury in advance sometimes they misunderstand what's going on.

Now, in this particular case this is going to be a hard-fought case. And I want to ask you to forgive me if you think I'm fighting too hard because I'm going all out in this case . . . .

. . . .

Now, before we get into the facts, just let me point out one other procedure. Both Ms. Saxon and I are not rookies. Ms. Saxon has tried many, many, many murder cases. So have I. So don't get the impression that you need to give either one of us any kind of break or special consideration. We are both pros. We have both been doing it for a long time.

Now, obviously, I'm a lot older than Ms. Saxon so I've been doing it a little bit longer. But you're not talking about a rookie State's Attorney or a rookie defense lawyer. [Emphasis added.]

Thereafter, throughout the trial, numerous incidents occurred between the trial judge and defense counsel in the presence of the jury: interruptions, insults, and other forms of inappropriate conduct. We note in particular some of these incidents. For instance, a troubling exchange occurred during defense counsel's cross-examination of State witness Mark Tackas, a crime lab technician with the Baltimore City Police Department. During that examination, the trial judge had defense counsel arrested for contempt in front of the jury:

BY [DEFENSE COUNSEL]:

Q. And, . . . you also assumed that there may have been a blood trail and so you went to look for one?

MS. SAXON [State's Attorney]: Objection.

THE COURT: He didn't assume it. He saw it. . . .

[DEFENSE COUNSEL]: Judge, will you stop please?

THE COURT: No. . . . You must ask him properly phrased questions.

[DEFENSE COUNSEL]: I've only been doing this for twenty-five years and, honestly, I've never had this much interference in twenty-five years.

THE COURT: . . . [D]o you want a repetition of something that happened? [2] I don't want—

_____

2. The trial judge previously had ordered defense counsel's arrest for contempt out of the presence of the jury. In this context, it appears she

[DEFENSE COUNSEL]: So be it. I want to represent my client.

THE COURT: All right, so be it. *Mr. Sheriff, take him back.*

[DEFENSE COUNSEL]: *Are you going to lock me up again?*

THE COURT: *Afraid so....*

[DEFENSE COUNSEL]: All right, Mr. Sheriff.

THE COURT: We are taking another recess.

[DEFENSE COUNSEL]: *—my second arrest.*

THE CLERK: All rise, please. [Emphasis added.]

On December 21, 1994, during the cross-examination of another State witness, Alexander Jason, the judge interrupted defense counsel's questioning. She supplied her own version of the question, claiming it to be more proper. When defense counsel asked his version of the question again, the State's Attorney objected, but the trial judge overruled her:

[DEFENSE COUNSEL]. *Was it* [the seat in petitioner's car] *a flat seat like this table?*

THE COURT: *What kind of seat did the one have that you examined?*

[DEFENSE COUNSEL]: Objection, Judge. May I ask my questions, Judge?

THE COURT: Not if you do it improperly. Let's get this done.

[DEFENSE COUNSEL]: Was that improper? [3]

THE COURT: *I think mine would have made the same thing much simpler....*

. . . .

Q. *Was it a flat seat, Mr. Jason?*

---

was referring to that arrest while attempting to prevent the jury from learning about it.

**3.** Defense counsel cross-examined the State's witnesses appropriately throughout this exchange using, in many instances, leading questions to which the trial judge apparently objected.

MS. SAXON: Objection.

THE COURT: *Overruled.* Was it? [Emphasis added.]

The exchange that followed was ripe with improper interjections by the judge and retorts by defense counsel. It also involved another contempt citation of him by the judge in front of the jury:

[DEFENSE COUNSEL]: Mr. Jason, was this a bucket seat?

MS. SAXON: Objection.[4]

THE COURT: Overruled. What kind of a seat was it[?] Can't he tell us, not what kind of seat it wasn't ... ?

[DEFENSE COUNSEL]: I don't know what to do, Judge.

[THE WITNESS]: Yes, it was a bucket seat.

THE COURT: I know what to do, have him describe the seat.

[DEFENSE COUNSEL]: *You want to take over the case? If you try the case for me—*

THE COURT [Addressing defense counsel]: ... I'm not going to sit here—

[DEFENSE COUNSEL]:—*you will lose it.*[5]

. . . .

Q. Mr. Jason, would how the hand and the gun were positioned have—

THE COURT: *Sustained.*[6] The preface is improper.

---

4. Defense counsel was still cross-examining the State's witness, Alexander Jason, at the time.

5. The defendant, as we have noted, was convicted.

6. At this point and later in the quoted portions of the record, the trial judge appears to rule on objections not transcribed into the record. Petitioner argues that the judge was sustaining objections never made. The record fails to reflect any pending objection at this point that she could sustain.

[DEFENSE COUNSEL]: Judge, you are doing all of her work.

THE COURT: . . . I am not allowing the questions to be asked in this form.

[DEFENSE COUNSEL]: Judge, can you—can I ask a favor, can you stop interfering?

THE COURT: No. No. . . . You may not. I'll ask you to obey my rulings.

[DEFENSE COUNSEL]: All right. Do you want to ask the questions because every question I ask is wrong[?]

THE COURT: . . . [*I* ]*t's contempt again.*[7] Please just ask questions in accordance to my rulings which you well understand.

. . . .

[DEFENSE COUNSEL]. All right, Mr. Jason, she asked for a series of incomplete demonstrations. Would you step forward and demonstrate exactly what happened in this case?

THE COURT: *Sustained.*[8] He doesn't know what happened but he can demonstrate what his hypothesis or theory is as to what happened.

[DEFENSE COUNSEL]: *Judge, there's an extra chair down here if —*

THE COURT [Addressing defense counsel]: . . . *I've already got my list* but let's deal with that later. Now—

[DEFENSE COUNSEL]: *Are you threatening me with contempt again?*

THE COURT: *Yes, I not only threaten you, I've found*

---

**7.** This finding of contempt was, insofar as the record reflects, in the presence of the jury.

**8.** Again, the record fails to reflect that there was any objection before the court to be sustained.

*you in contempt.*[9]   Would you want to demonstrate what your theory is as to how it happened?   [Emphasis added.]

The exchange continued:

[DEFENSE COUNSEL]: Now, Mr. Jason, would you come to the jury box without pointing the gun at the jury and demonstrate—

THE COURT: *Maybe they'd like to point it at you as well as us.*   Come on, . . . let's not go back and forth.

[DEFENSE COUNSEL]: You are unbelievable, Judge. *Can I hold you in contempt of Court?*   [Emphasis added.]

Later that day, apparently with the jury present, the judge insinuated that defense counsel was attempting to steal a marker from the courtroom:

MS. SAXON: . . . Where is the marker please . . ., that you used?

[DEFENSE COUNSEL]: Right here.

. . . .

THE COURT: *They cost five bucks a piece.   Belong to the City of Baltimore.*

MS. SAXON: Would you mark—Your Honor, I'd like to mark—

[DEFENSE COUNSEL]: Judge, I know you weren't suggesting that [I] was going to be a thief about that, were you?

THE COURT: *It was in your pocket.   I saw you—*

[DEFENSE COUNSEL]: Judge, see wasn't [sic] in my pocket.   It was here on the table.

THE COURT: You gave it back so—

[DEFENSE COUNSEL]: Boy. [Emphasis added.]

During defense counsel's cross-examination of a witness, the judge encouraged the State to object, which resulted in another retort by defense counsel:

---

**9.**   This was also before the jury.

[DEFENSE COUNSEL]: Okay. But you were not asked to look for other signs in the car that would not look to your naked eye to be blood but which might be blood, correct?

A. This question cannot be answered yes or no and you know it.

THE COURT: All right.

Q. Excuse me?

THE COURT: ... *I will sustain if I heard an objection* because—

[DEFENSE COUNSEL]: *Judge, do we have two prosecutors here?* [Emphasis added.]

Further examples of inappropriate conduct occurred on January 4, 1995, while Donald Wright, a medical examiner called as an expert by the State, was on the stand. After an extensive exchange between defense counsel and the trial judge during the direct examination of Wright, the judge sent the jury out, held the defense counsel in contempt, and sent him to the court holding cell. After the proceedings resumed, the following occurred:

[DEFENSE COUNSEL]: Now, Judge, I want to—I have a preliminary matter.

THE COURT: Bring the jury in....

[DEFENSE COUNSEL]: Now, Judge, I want to address the Court—

THE COURT: Now [addressing defense counsel], *I do not wish to hear from you.*

[DEFENSE COUNSEL]: Judge, you don't have the option, unfortunately because—

THE COURT: I do have the option.... I have the option of bringing the jury in.

[DEFENSE COUNSEL]: *I want to make a timely motion for mistrial and, Judge, I want to state my grounds* because I want you to do the job to react to counsel ... and if I'm right I want you to agree with me and if I'm wrong, I want you to disagree with me.

THE COURT: I disagree with you. *The motion's denied.*

[DEFENSE COUNSEL]: *Well, Judge, you haven't heard my reasons. That's arbitrary and capricious.*

THE COURT: *I'm being arbitrary and capricious then but I'm being—*

[DEFENSE COUNSEL]: Well, Judge, you've got to stop. That is not fair—

THE COURT: Bring the jury in.

[DEFENSE COUNSEL]:—because you're losing sight of the fact that [this] isn't [you] versus [me]. This is a trial involving Mr. Johnson and you have ceased to become an—

THE COURT: Bring the jurors in.

[DEFENSE COUNSEL]:—impartial and fair judge and, Judge, you've got to change back.

THE CLERK: Here they come.

THE COURT: Bring the jurors in. [Emphasis added.]

Later, during defense counsel's recross-examination of Wright, the judge frequently interrupted the proceedings to ask her own questions and to prevent defense counsel from asking his questions.

Similar occurrences took place during the examinations of Ronald Staffer and Lieutenant Charles J. Keys, firearms examiners with the Baltimore City Police Department. The judge often would rephrase counsel's questions or "sustain" objections never made by the State prior to the interruptions. We note further that on the same day, during questioning by the State, the judge occasionally instructed the State's Attorney on how to ask proper questions of her witnesses. During these incidents, the defense counsel often complained about the judge acting as a prosecutor.

## DISCUSSION

### *The conduct of the trial judge impaired petitioner's right to a fair and impartial trial.*

This Court recently addressed the right to a fair and impartial trial in *Jefferson–El v. State*, 330 Md. 99, 622 A.2d 737 (1993). In that case, we stated:

A defendant in a criminal case has a right to a fair trial. *Spence v. State*, 296 Md. 416, 423, 463 A.2d 808, 811 (1983); *Scott v. State*, 289 Md. 647, 655, 426 A.2d 923, 928 (1981); *Smith v. State*, 64 Md.App. 625, 635, 498 A.2d 284, 289 (1985). *See also Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710 (1967). It is well settled in Maryland that fundamental to a defendant's right to a fair trial is an impartial and disinterested judge. *Boyd v. State*, 321 Md. 69, 78, 581 A.2d 1, 9 (1990); *In re Turney*, 311 Md. 246, 253, 533 A.2d 916, 920 (1987); *Costello v. State*, 237 Md. 464, 473, 206 A.2d 812, 817 (1964); *Thanos v. Superintendent*, 204 Md. 665, 667–68, 104 A.2d 926, 927 (1954); *Bd. of Medical Examiners v. Steward*, 203 Md. 574, 581, 102 A.2d 248, 251–52 (1954); *Western Md. Dairy Corp. v. Brown*, 169 Md. 257, 268, 181 A. 468, 473–74 (1935). "A fair and impartial trial is a judicial process by which a court hears before it decides; by which it conducts a dispassionate inquiry and renders judgment only after receiving evidence." *Spence*, 296 Md. at 423, 463 A.2d at 811, citing *People v. Diaz*, 1 Ill.App.3d 988, 275 N.E.2d 210, 212–13 (1971). "It is beyond dispute that the trial judges perform a unique and persuasive role in that system: 'confidence in the judiciary is essential to the successful functioning of our democratic form of government.'" *Scott v. U.S.*, 559 A.2d 745, 748 (D.C.App.1989), citing *U.S. v. Quattrone*, 149 F.Supp. 240, 242–43 (D.D.C.1957).

It is because judges occupy a distinguished and decisive position that they are required to maintain high standards of conduct. *Dempsey v. State*, 277 Md. 134, 149, 355 A.2d 455, 463 (1976); *Patterson v. State*, 275 Md. 563, 579, 342 A.2d 660, 669 (1975); *See also Elmer v. State*, 239 Md. 1, 10–11, 209 A.2d 776, 781–82 (1965); *Vandegrift v. State*, 237 Md. 305, 311, 206 A.2d 250, 254 (1965). Their conduct during a trial has a direct bearing on whether a defendant will receive a fair trial because their opinion or manifestations thereof usually will significantly impact the jury's verdict. In addition, if the defendant has elected to be tried

by a jury, it is the province of that jury to decide the guilt or innocence of the defendant.

*Id.* at 105–06, 622 A.2d at 740–41.

In *Apple v. State,* 190 Md. 661, 59 A.2d 509 (1948), the defendant's counsel, as in this case, argued that the trial judge's abrupt and harsh behavior toward him and his client when he took the stand demonstrated the judge's prejudice against the defense's case. We stated:

A judge should at all times be impartial and courteous and should not permit his personal feelings, if he has any, to be exhibited before a jury, but unless there is some clear showing ... that his words or his actions influenced the jury adversely to the appellant, the mere fact that the trial was conducted in an impatient and somewhat peremptory way, does not justify a reversal.

*Id.* at 670, 59 A.2d at 513. We ultimately affirmed the conviction in *Apple,* holding that the record, as a whole, did not show that the defendant "was prejudiced by any conduct of the judge trying the case." *Id.*

In another case questioning judicial conduct, *Bryant v. State,* 207 Md. 565, 584–85, 115 A.2d 502, 510 (1955), we stated that "[i]t is a precept of the law that a judge should be impartial and courteous, and should not allow his personal feelings to be exhibited before the jury, but should be careful in his remarks during the progress of the trial." Like the defense attorney here, the defense counsel in *Bryant* argued that the trial judge had "exhibited an antagonistic attitude" toward him and his client. In particular, the counselor in *Bryant* argued that the trial judge "insinuated that he was impeding the progress of the trial" and often made "gestures and grimaces and ... brusque comments [that] manifested bias, created an atmosphere of resentment, and prejudiced the jury against him, thus depriving him of a fair and impartial trial and ... due process of law." *Id.* at 584, 115 A.2d at 510. We said:

The degree of severity of a trial judge's rebukes of an attorney, when the occasions require them, is left to the

discretion of the judge as long as they do not prevent a fair and impartial trial. Unless there is some clear showing that the judge's statements influenced the jury against the defendant, the mere fact that the trial was conducted in an impatient and brusque way does not justify a reversal of the judgment.

*Id.* at 585, 115 A.2d at 511. We ultimately held that the record in that case did not reveal "that the actions and statements of the trial judge prejudiced the jury against appellant so as to deprive him of a fair and impartial trial." *Id.*

Were the conduct in petitioner's case limited to a few moderate exchanges between the judge and the defense counsel not involving contempt matters, as *Apple* and *Bryant* appear to have involved, we might conclude here, as in those cases, that the record fails to demonstrate that this trial judge's behavior prejudiced petitioner's right to a fair and impartial trial. The record before us, however, is not so limited. The judge's conduct ventured beyond limited incidents of harsh behavior or gestures; she interjected her own point of view often during the trial, her behavior was frequently disruptive, and her practice of premature rulings in the absence of an objection was, in the context of this case, unacceptable.

We are particularly concerned that the judge ordered defense counsel's arrest for contempt of court before the jury. Although this Court never has addressed the impact of such an incident on a defendant's right to a fair and impartial trial, the Court of Special Appeals has. *See Suggs v. State,* 87 Md.App. 250, 589 A.2d 551 (1991). In *Suggs,* the trial judge informed the jury directly that one of defense counsel's questions was "highly inappropriate." He then instructed the attorney not to repeat the question. When the defense counsel attempted to rephrase the question properly, the trial judge ordered the sheriff to "take a hold" of him. He then ordered a recess and the jury left. During the hearing that followed, the trial judge recanted on having the counselor arrested but admonished him outside the jury's presence.

388

When the jury returned, the trial judge attempted to give a curative instruction. During that instruction, however, the trial judge told the jury that his own behavior was "because the defendant's lawyer was about ten miles out of limit." *Id.* at 257, 589 A.2d at 554. Noting the arrest of counsel in the jury's presence and his poorly-worded curative instruction, the Court of Special Appeals held that under the totality of the circumstances, the judge's comments "painted such a prejudicial portrait of the defense counsel as to deny appellant his right to a fair trial." *Id.*, 589 A.2d at 555. *See also Long v. State,* 31 Md.App. 424, 432, 356 A.2d 588, 592 (1976) (holding that trial judge's order to arrest defense witness in front of jury and accompanying comments indicated his "disbelief of the witness," thus committing prejudicial error).

In the case *sub judice*, the judge's act of threatening the defense attorney with contempt began, as we have seen, during his opening statement and in the presence of the jury. That, along with defense counsel's actual arrest for contempt before the jury and the court's later remarks, "it's contempt again," and "I not only threaten you, I've found you in contempt," in the presence of the jury, infringed upon petitioner's right to a fair and impartial trial as in *Suggs*. Regardless of the conduct of defense counsel, arresting and citing him for contempt in separate incidents before the jury and repeatedly threatening him in the jury's presence, painted defense counsel in such a negative light that it deprived petitioner of a fair trial. *See Bryant,* 207 Md. at 585, 115 A.2d at 511.

The Court of Special Appeals said in *Scott v. State,* 110 Md.App. 464, 677 A.2d 1078 (1996), a case concerning recusal but applicable to the behavior in this case:

Although judicial anger is understandable, a judge should not let his displeasure with litigants, witnesses, or lawyers unduly affect his conduct in the courtroom.... In this case, [the] Judge ... allowed his anger to get the best of him; as a result, he adopted an unjudicial attitude toward appellant [and his counsel]. We think it is important to repeat the following admonition of this Court in *Betz v. State,* 99 Md.App. 60, 635 A.2d 77 (1994):

Many judges have experienced aggravating—sometimes even defiant—conduct on the part of lawyers and others (just as many lawyers, and others, have experienced aggravating conduct on the part of judges), and, in the press of attempting to move dockets and resolve cases fairly and efficiently, the experience can cause instant irritation. Judges, too, are human and have human emotions; they get angry, often for good reason. But, unlike other people, judges have the sovereign power to punish, to deprive persons of their liberty and property, and that alone requires that they restrain their irritation. Punishment for contempt should never be imposed in anger, as an immediate emotionally reflexive response.

*Id.* at 489, 677 A.2d at 1090. Applying this reasoning to the case at hand, we note that the disagreements between the judge and counsel that resulted in contempt charges began during opening statement and later related primarily to the format of the questions he asked during trial. In the trial setting, although counsel and the judge have great responsibilities, the judge had the greater duty to restrain her anger. It was her responsibility to maintain control over the proceedings. Her failure to maintain control in an appropriate manner prejudiced petitioner and his case.

A review of cases in other jurisdictions that have addressed the arrest or citation of a criminal defense attorney before the jury supports our view that petitioner's conviction must be reversed. In *Ash v. State,* 93 Okla.Crim. 125, 129, 225 P.2d 816, 819 (1950), the trial judge cited the defense counsel for contempt before the jury and then ordered him to "purge himself of the charge of contempt before this court, before further participating in this trial." On appeal, the Oklahoma Criminal Court of Appeals reasoned that "[t]he proper thing to do is to excuse the jury and thereafter fine counsel." *Id.* at 130, 225 P.2d at 819. Noting that such a mistake was not *per se* reversible error, *id.,* the Court held that, nevertheless, the defendant in that case had not received a fair trial. *Id.* at 132, 225 P.2d at 820.

Likewise, in *Meek v. State*, 112 Nev. 1288, 1295–97, 930 P.2d 1104, 1109 (1996), the Supreme Court of Nevada held, *inter alia*, that the defendant's case had been prejudiced by the trial court's ruling the defense counsel in contempt and fining him before the jury. *See also United States v. Kelley*, 314 F.2d 461, 463–64 (6th Cir.1963) (holding that trial judge's act of threatening defense lawyer twice with contempt "tended to belittle the lawyer in the eyes of the jury," and "operated to prevent the defendant from having a fair trial."); *Neal v. State*, 36 Ala.App. 156, 158, 54 So.2d 613, 615 (holding as "improper and prejudicial" trial court's statement to defense lawyer in front of jury, "I ought to send you to jail."), *cert. denied*, 256 Ala. 373, 54 So.2d 616 (1951); *Alley v. State*, 619 So.2d 1013, 1014–15 (Fla.Dist.Ct.App.1993) (reversing conviction when trial court deliberately threatened defense counsel with contempt before the jury and, on another occasion, stated to him, "You're liable to wind up in jail with him [the defendant] if you keep talking out."); *cf. State v. Collins*, 66 Wash.2d 71, 74, 400 P.2d 793, 794–95 (1965) (holding that trial judge's "critical remarks directed to defense counsel, and his being adjudged in contempt of court, all in the presence of the jury" violated defendant's state constitutional right to counsel). *But see Maulding v. State*, 296 Ark. 328, 337, 757 S.W.2d 916, 920–21 (1988) (refusing to overturn conviction because, under the totality of the circumstances, including a curative instruction, trial court's finding defense counsel in contempt in front of the jury was not reversible error); *Burris v. State*, 161 Tex.Crim. 210, 214, 276 S.W.2d 260, 262–63 (1953) (holding no error was committed when trial court held defense counsel in contempt in front of the jury, "[t]hough it would have been the better practice to reprimand counsel and impose the fine in the absence of the jury"), *cert. denied*, 350 U.S. 830, 76 S.Ct. 61, 100 L.Ed. 741 (1955).

Our concern regarding fairness during the trial in this case does not stop with the arrests for contempt or the threatening of contempt. Interruptions, premature rulings on objections, *sua sponte* rephrasing of questions, and insults can all lead to an atmosphere resulting in unacceptable prejudice to a defen-

dant's right to a fair trial. In *Spencer v. State*, 76 Md.App. 71, 543 A.2d 851 (1988), the Court of Special Appeals reversed a conviction after an inappropriate exchange between the trial judge and defense counsel occurred in which the judge insinuated in front of the jury that the defense counsel had lied to the court. The intermediate appellate court noted that a trial judge must

> insure that the trial is conducted in an orderly way and, in general, make sure that justice is done. He must, however, discharge his duties in a "calmly judicial, dispassionate and impartial" manner. This is imperative in order to protect the defendant's right to a fair trial inasmuch as the judge's position as the presiding judge gives him tremendous influence over the jury.

*Id.* at 77, 543 A.2d at 854 (citations omitted). Ultimately, the Court of Special Appeals held "under the totality of the circumstances, the attack on defense counsel in front of the jury was reversible error because it denied appellant a fair trial." *Id.* at 78, 543 A.2d at 855. The court reasoned that "comments made from the bench and directed to defense counsel directly impugned her integrity; they indicated that she was dishonest with the court and the jury. Such statements are likely to be devastating to the defense and, thus, should not be made in front of the jury." *Id.* at 78, 543 A.2d at 854–55.

Appellate courts in other jurisdictions have overturned criminal convictions because the conduct or demeanor of the trial judges resulted in a violation of the defendant's fair and impartial trial rights. In *Earl v. State*, 111 Nev. 1304, 1311, 904 P.2d 1029, 1033 (1995), for example, the Supreme Court of Nevada examined the trial court's conduct toward the defense counsel in the presence of the jury. At one point, the trial judge said to the prosecutor, "[i]f you object I will sustain." [10] *Id.* at 1310, 904 P.2d at 1033. During the same examination, the judge ordered a recess in order "to tell you [defense

---

10. The prosecutor objected and the trial court sustained.

counsel] how to practice law." *Id.* During the defense counsel's closing argument, the trial court even insinuated that he may have been drinking. Citing the cumulative effect of these and other comments, the court overturned the defendant's conviction due to the prejudice the comments caused her case. *Id.* at 1311, 904 P.2d at 1034.

In *People v. Wilson*, 21 Mich.App. 36, 37, 174 N.W.2d 914, 915 (1969), the trial judge "repeatedly disciplined counsel, often before the jury, questioned and cross-examined witnesses, often argumentatively, and 'clarified' testimony." The Michigan Court of Appeals, when reversing, held that "the trial judge too frequently interjected her personality and views into the proceedings." *Id.* at 38, 174 N.W.2d at 915–16. Noting that "[t]rial judges who berate, scold, and demean a lawyer so as to hold him up to contempt in the eyes of the jury, destroy that balance of judicial impartiality necessary to a fair hearing," the court further held that the trial judge's behavior denied the defendant a "fair, impartial, and orderly trial." *Id.* at 38–39, 174 N.W.2d at 916. *See also Wilkerson v. State*, 510 So.2d 1253, 1254 (Fla.Dist.Ct.App.1987) (holding trial judge's repeated rebukes of defense counsel, including "'I can't trust you down there' ... worked to deny [defendant] a fair and impartial trial."); *Tyndall v. State*, 234 So.2d 154, 155 (Fla.Dist.Ct.App.1970) (remanding for new trial because judge's tirade to defense attorney that evidence he sought to admit was "outrageous" and "illegal" prejudiced "defendant's receiving a fair trial."); *People v. Conyers*, 194 Mich.App. 395, 400, 404, 405, 487 N.W.2d 787, 788, 791 (1992) (determining that judge violated impartiality requirement in his statement to the jury: "I cannot, in honesty, say as I look at [the defendant], that I presume him to be innocent," and that judge's "excessive interference in the examination of witnesses, repeated rebukes and disparaging remarks directed at defendant's counsel, and marked impatience in the presence of the jury displayed an attitude of partisanship, which resulted in the denial of a fair trial."); *State v. Staley*, 292 N.C. 160, 165–70, 232 S.E.2d 680, 684–86 (1977) (holding that trial judge's act of implying to jury that defense witnesses were

lying, his overly interrogative role in favor of prosecution, his failure to rule on defense motions, and multiple reprimands to defense counsel for speech-making prejudiced jury against defense); *McMahan v. State,* 96 Okla.Crim. 176, 177–78, 251 P.2d 204, 205 (1952) (modifying sentence because trial court's statement to defense attorney, "You can not pull this one on me in this court," in front of jury "might have ... caused them to give him more punishment than they might have done" having not heard the statement); *State v. Whalon,* 1 Wash.App. 785, 798–800, 464 P.2d 730, 738–40 (1970) (reasoning that trial judge's characterization in front of jury of defense attorney's sympathetic statement to victim as "highly improper" was a "serious overreaction" that "constituted reversible error.").

As noted above, the judge in the case at bar repeatedly admonished defense counsel for his questioning, implying that even simple questions were inappropriate or a waste of time. She often ruled adversely to petitioner on objections that were not made. She implied to the jury that they should feel contempt for the defense counsel by her comment that the jury might like to point the murder weapon at him and at herself. The judge frequently interjected her own questions without giving witnesses the chance to answer the questions posed by either counsel. Often, these questions only reiterated the counselor's examination or, at some points, made the examination more complex to the witness. The judge even implied in front of the jury that the defense counsel was attempting to steal a courtroom marker, an obvious comment on his character. We note further that she frequently accused him of delaying the trial, and, as we have indicated, found him in contempt in the presence of the jury on at least two, and perhaps three, occasions and threatened him with contempt in their presence on other occasions. Under the totality of the circumstances, *the cumulation of these abrupt and arbitrary comments, unnecessary interrogations, premature rulings from the bench, and the arrest and citations of the defense*

attorney in the presence of the jury clearly violated petitioner's right to a fair trial. As a result, we must reverse petitioner's conviction and remand for a new fair and impartial trial.[11]

Because we reverse for the reasons stated above, it is unnecessary to address appellant's remaining questions.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

---

11.  We note that four previously reported Court of Special Appeals cases have questioned the conduct of this judge, although only one of them resulted in a reversal. *See Keene Corp. v. Hall*, 96 Md.App. 644, 667–68, 626 A.2d 997, 1009, *cert. granted*, 332 Md. 741, 633 A.2d 102 (1993); *Waddell v. State*, 85 Md.App. 54, 58–60, 582 A.2d 260, 263–64 (1990); *Ferrell v. State*, 73 Md.App. 627, 638–39, 536 A.2d 99, 103–05 (1988), *rev'd on other grounds*, 318 Md. 235, 567 A.2d 937, *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990); *McMillian v. State*, 65 Md.App. 21, 26, 499 A.2d 192, 194 (1985). Although we have granted certiorari to the Court of Special Appeals in *Keene Corp.*, no opinion has been issued because the case is on the inactive docket due to Keene Corporation's filing for bankruptcy protection. It does not appear that the defense counsel in any of these cases was the defense counsel in the instant case.